# EXHIBIT A



# Houston Casualty Company

### Houston, TX

## DECLARATIONS
## EMPLOYMENT PRACTICES LIABILITY INSURANCE
### THIS IS A CLAIMS MADE AND REPORTED POLICY

> **"This contract is registered and delivered as a surplus line coverage under the Alabama Surplus Line Insurance Law."**

| | | |
|---|---|---|
| Broker No.: 1181 | No.: | H716-915480 |
| CRC Atlanta | Renewal of No.: | H715-912740 |

**Item 1.** Named Insured: **PMTD Restaurants LLC; RFM Enterprises Inc; Champion Restaurants-Fiesta LLC; EPS Restaurants LLC; Lincoln Gasoline Operating LLC DBA KFC & Taco Bell**

**Item 2.** Address: **3535 Roswell Road, Suite 52
Marietta,
GA, 30062**

**Item 3.** The Named Insured is a: LLC

**Item 4.** Limits of Insurance:

$ 1,000,000     Each "Claim" (including "defense costs")
$ 1,000,000     Total Policy Limit for all "Claims" (including "defense costs")

**Item 5.** Retention:

$ 10,000     Each "Claim"
$ 10,000     Third Party

**Item 6.** Notice of Claim:
Director of Claims:
TM-HCC Professional Lines Group
37 Radio Circle Drive
Mt. Kisco, New York 10549
Telephone: 800-742-2210

**Item 7.** Program Administrator:
TM-HCC Professional Lines Group
235 Pine Street, Suite 1675
San Francisco, California 94104
Telephone: 415-288-0701

**Item 8.** Date of Application: 12/14/2016

**Item 9.** Policy Period: Inception Date: 12/26/2016     Expiration Date: 12/26/2017
12:01 A.M. Standard Time at the address of the Named Insured herein.

**Item 10.** Premium: $ 16,453.00     Policy Fee     50.00

GA SL TAX: $660.12

**Item 11.** Attachments: EP 0001 (12/01),

This Policy has been signed at <u>San Francisco, California</u> Dated <u>12/19/2016</u>

by _____
Authorized Representative

Surplus Lines Broker: **Frederic William Buck**
This contract is registered and delivered as a surplus line coverage under the Surplus Line Insurance Law O.C.G.A. Chapter 33-5.

EP0002 01/11     Page 1 of 2



# Houston Casualty Company
### Houston, TX

## DECLARATIONS
## EMPLOYMENT PRACTICES LIABILITY INSURANCE
### THIS IS A CLAIMS MADE AND REPORTED POLICY

> "This contract is registered and delivered as a surplus line coverage under the Alabama Surplus Line Insurance Law."

**EP 0066, EPHRM001, EP ALLOC, EP 0068, EP 0044, EP 0062, EP 00CMR, EP 528, TRIA (2015), EP 406, EP 00IM , EP 0050, EP NSOL, EP 532, EP 532**

This Policy has been signed at San Francisco, California Dated 12/19/2016

by _____
Authorized Representative

EP0002 01/11

## Houston Casualty Company
Houston, TX

| Endorsement Effective Date | Policyholder | Policy Number | Endorsement |
|---|---|---|---|
| 12/26/2016 | **PMTD Restaurants LLC; RFM Enterprises Inc; Champion Restaurants-Fiesta LLC; EPS Restaurants LLC; Lincoln Gasoline Operating LLC DBA KFC & Taco Bell** | **H716-915480** | **EP 0066** |

"**This contract is registered and delivered as a surplus line coverage under the Alabama Surplus Line Insurance Law.**"

**THIS ENDORSEMENT CHANGES YOUR POLICY. PLEASE READ IT CAREFULLY.**

**NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT**

This endorsement modifies your Policy as follows:

**1.** This insurance does not apply:

**A.** To liability:

**(1)** With respect to which an "insured" under this policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

**(2)** Resulting from the "hazardous properties" of "nuclear material" and with respect to which **(a)** any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or **(b)** the "insured" is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

**B.** To liability resulting from "hazardous properties" of "nuclear material", if:

**(1)** The "nuclear material" **(a)** is at any "nuclear facility" owned by, or operated by or on behalf or, an "insured" or **(b)** has been discharged or dispersed therefrom;

**(2)** The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of, by or on

by _____
Authorized Representative

## Houston Casualty Company
### Houston, TX

| Endorsement Effective Date | Policyholder | Policy Number | Endorsement |
|---|---|---|---|
| 12/26/2016 | **PMTD Restaurants LLC; RFM Enterprises Inc; Champion Restaurants-Fiesta LLC; EPS Restaurants LLC; Lincoln Gasoline Operating LLC DBA KFC & Taco Bell** | **H716-915480** | **EP 0066** |

behalf of an "insured"; or

**(3)** The liability arises out of the furnishing by an "insured" of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility", but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion **(3)** applies only to "property damage" to such "nuclear facility" and any property threat.

**2.**   As used in this endorsement:

**A.**   "Hazardous properties" includes radioactive, toxic or explosive properties.

**B.**   "Nuclear material" means "source material", "special nuclear material" or "by-product material".

**C.**   "Source material", "special nuclear material", and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof.

**D.**   "Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor".

**E.**   "Waste" means any waste material **(1)** containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and **(2)** resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility".

**F.**   "Nuclear facility" means:

**(1)** Any "nuclear reactor";

**(2)** Any equipment or device designed or used for **(a)** separating the isotopes of uranium or plutonium, **(b)** processing or utilizing "spent fuel", or **(c)** handling, processing or packaging "waste";

by _____
Authorized Representative

## Houston Casualty Company
Houston, TX

| Endorsement Effective Date | Policyholder | Policy Number | Endorsement |
|---|---|---|---|
| 12/26/2016 | **PMTD Restaurants LLC; RFM Enterprises Inc; Champion Restaurants-Fiesta LLC; EPS Restaurants LLC; Lincoln Gasoline Operating LLC DBA KFC & Taco Bell** | **H716-915480** | **EP 0066** |

**(3)** Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the "insured" at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste"; and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations.

**G.** "Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

**H.** "Property damage" includes all forms of radioactive contamination of property.

This endorsement changes the Policy to which it is attached effective on the inception date of the Policy unless a different date is indicated below. All other terms and conditions of this Policy remain unchanged.

by _____
Authorized Representative

## Houston Casualty Company
Houston, TX

| Endorsement Effective Date | Policyholder | Policy Number | Endorsement |
|---|---|---|---|
| 12/26/2016 | **PMTD Restaurants LLC; RFM Enterprises Inc; Champion Restaurants-Fiesta LLC; EPS Restaurants LLC; Lincoln Gasoline Operating LLC DBA KFC & Taco Bell** | **H716-915480** | **EPHRM001** |

> "This contract is registered and delivered as a surplus line coverage under the Alabama Surplus Line Insurance Law."

## THIS ENDORSEMENT CHANGES YOUR POLICY. PLEASE READ IT CAREFULLY.

### HUMAN RESOURCES MANAGEMENT SERVICES AND RETENTION MODIFICATION ENDORSEMENT

This endorsement modifies your Policy as follows:

**HR Pilot™ Services Notice**

In conjunction with your Policy a Human Resources Management program titled HR Pilot™ is available to you. To implement these services you need to call 800-980-2988.

**Retention Modification**

**Section V – Retention, Item 1** and **Item 1.a.** are deleted and replaced by the following:

**SECTION V – RETENTION**

1. Our obligation to pay under this Policy applies only to the amount of "loss" in excess of the **RETENTION** amount shown in the Declarations and the **LIMITS OF INSURANCE** shown in the Declarations will not be reduced by the amount of such **RETENTION**.

   The applicable **RETENTION** will be decreased by fifty percent (50%) (i.e., a $5,000 **RETENTION** will be $2,500) if one or both of the following conditions are met:

   a. **Wrongful Termination or Demotion Condition.** For any "claim" alleging wrongful termination or wrongful demotion of an "employee" if prior to termination or demotion of that "employee" you have consulted with and materially complied with the advice of the HR Pilot™ telephone Help Line (800-

by *[signature]*
Authorized Representative

## Houston Casualty Company
Houston, TX

| Endorsement Effective Date | Policyholder | Policy Number | Endorsement |
|---|---|---|---|
| 12/26/2016 | **PMTD Restaurants LLC; RFM Enterprises Inc; Champion Restaurants-Fiesta LLC; EPS Restaurants LLC; Lincoln Gasoline Operating LLC DBA KFC & Taco Bell** | **H716-915480** | **EPHRM001** |

980-2988) or your assigned "Panel Defense Counsel". This provision does not apply unless the contact with either the above is made at least 24 hours prior to the termination or demotion, and the HR Pilot™ Help Line or the "Panel Defense Counsel" has had a reasonable length of time to respond to the information provided by you.

This endorsement changes the Policy to which it is attached effective on the inception date of the Policy unless a different date is indicated above. All other terms and conditions of this Policy remain unchanged.

by _[signature]_
Authorized Representative

## Houston Casualty Company
### Houston, TX

| Endorsement Effective Date | Policyholder | Policy Number | Endorsement |
|---|---|---|---|
| 12/26/2016 | **PMTD Restaurants LLC; RFM Enterprises Inc; Champion Restaurants-Fiesta LLC; EPS Restaurants LLC; Lincoln Gasoline Operating LLC DBA KFC & Taco Bell** | **H716-915480** | **EP ALLOC** |

> **"This contract is registered and delivered as a surplus line coverage under the Alabama Surplus Line Insurance Law."**

**THIS ENDORSEMENT CHANGES YOUR POLICY. PLEASE READ IT CAREFULLY.**

**ALLOCATION PROVISION ENDORSEMENT**

It is agreed that **SECTION IV - LIMITS OF INSURANCE, Subsection 5. Allocation of "Defense Costs"** is deleted in its entirety and replaced with the following:

**SECTION IV          LIMITS OF INSURANCE**

**5.      Allocation of "Defense Costs"**

If both "loss" covered by this Policy and "loss" not covered by this Policy are incurred in connection with any "claim," we will use all reasonable efforts to agree, with you, upon a fair and proper allocation of "defense costs" attributable to the covered "loss" and the uncovered "loss."

If there can be an agreement on the allocation of "defense costs," we will pay, on a current basis, "defense costs" allocated to the covered "loss" in accordance with our obligations under the Policy.

If there can be no agreement on an allocation of "defense costs:"

a.      then no presumption as to allocation shall exist in any arbitration, suit or other proceeding;

b.      we will pay, on a current basis, "defense costs" that we believe are reasonably related to the covered "loss" under the Policy until a different allocation is negotiated or arbitrated; and

c.      we, if requested by you, shall submit such dispute to binding arbitration, in which case the rules of the American Arbitration Association shall apply.    All administrative costs associated with the arbitration shall be shared equally between the parties.  The amounts paid by you in connection with the arbitration will not be considered "loss" under the terms of this Policy.

by _____
Authorized Representative

EP ALLOC  (06/06 ed)                    Page 1 of 2

## Houston Casualty Company
### Houston, TX

| Endorsement Effective Date | Policyholder | Policy Number | Endorsement |
|---|---|---|---|
| **12/26/2016** | **PMTD Restaurants LLC; RFM Enterprises Inc; Champion Restaurants-Fiesta LLC; EPS Restaurants LLC; Lincoln Gasoline Operating LLC DBA KFC & Taco Bell** | **H716-915480** | **EP ALLOC** |

This endorsement changes the Policy to which it is attached effective on the inception date of the Policy unless a different date is indicated above. All other terms and conditions of this Policy remain unchanged.

by _(signature)_
Authorized Representative

## Houston Casualty Company
Houston, TX

| Endorsement Effective Date | Policyholder | Policy Number | Endorsement |
|---|---|---|---|
| 12/26/2016 | **PMTD Restaurants LLC; RFM Enterprises Inc; Champion Restaurants-Fiesta LLC; EPS Restaurants LLC; Lincoln Gasoline Operating LLC DBA KFC & Taco Bell** | **H716-915480** | **EP 0068** |

"This contract is registered and delivered as a surplus line coverage under the Alabama Surplus Line Insurance Law."

**THIS ENDORSEMENT CHANGES YOUR POLICY. PLEASE READ IT CAREFULLY.**

**SERVICE OF SUIT ENDORSEMENT**

This endorsement modifies your Policy as follows:

This applies in jurisdictions where the Company is not an admitted insurer.

It is agreed that in the event of the Company's failure to pay the amount claimed to be due hereunder, the Company, at the request of the Insured, will submit to the jurisdiction of a Court of competent jurisdiction within the United States and will comply with all requirements necessary to give such Court jurisdiction and all matters arising hereunder shall be determined in accordance with the law and practice of such Court. Nothing in this Endorsement constitutes or should constitute a waiver of the Company's rights to commence an action in any Court of competent jurisdiction in the United States, to remove an action to a United States District Court, or to seek a transfer of a case to another Court as permitted by the laws of the United States or any State in the United States.

It is further agreed that, pursuant to any statute of any state, territory or district of the United States which makes provision therefore, the Company hereby designates the Superintendent, Commissioner or Director of Insurance or other officer specified for that purpose in the statute, or his successor or successors in office, as its true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of the Insured or any beneficiary hereunder arising out of this Policy of insurance, and hereby designates the President of the Houston Casualty Company in care of the General Counsel, at 13403 Northwest Freeway, Houston, TX, 77040, as the person to whom the said officer is authorized to mail such process or true copy thereof.

It is further understood and agreed that service of process in such suit may be made upon RANDY RINICELLA, Secretary, at 13403 Northwest Freeway, Houston, TX, 77040, and that in any suit instituted against any one of them upon this contract, the Company will abide by the

by _____
Authorized Representative

# Houston Casualty Company
Houston, TX

| Endorsement Effective Date | Policyholder | Policy Number | Endorsement |
|---|---|---|---|
| **12/26/2016** | **PMTD Restaurants LLC; RFM Enterprises Inc; Champion Restaurants-Fiesta LLC; EPS Restaurants LLC; Lincoln Gasoline Operating LLC DBA KFC & Taco Bell** | **H716-915480** | **EP 0068** |

final decision of such Court or of any Appellate Court in the event of an appeal.

This endorsement changes the Policy to which it is attached effective on the inception date of the Policy unless a different date is indicated above. All other terms and conditions of this Policy remain unchanged.

by _____
Authorized Representative

# Houston Casualty Company
## Houston, TX

| Endorsement Effective Date | Policyholder | Policy Number | Endorsement |
|---|---|---|---|
| **12/26/2016** | **PMTD Restaurants LLC; RFM Enterprises Inc; Champion Restaurants-Fiesta LLC; EPS Restaurants LLC; Lincoln Gasoline Operating LLC DBA KFC & Taco Bell** | **H716-915480** | **EP 0044** |

> **"This contract is registered and delivered as a surplus line coverage under the Alabama Surplus Line Insurance Law."**

**THIS ENDORSEMENT CHANGES YOUR POLICY. PLEASE READ IT CAREFULLY.**

**DEFENSE COUNSEL (ATTORNEY) SELECTION MODIFICATION ENDORSEMENT**

THIS ENDORSEMENT MODIFIES YOUR POLICY AS FOLLOWS:

**SECTION I – COVERAGE  4. a. and b. are deleted and replaced by:**

**4.**     **Defense Counsel (Attorney) Selection**

    **a.**     We have the right and duty to select and appoint an attorney to defend you against any "suit" other than for criminal proceedings.

This endorsement changes the Policy to which it is attached effective on the inception date of the Policy unless a different date is indicated below. All other terms and conditions of this Policy

by _(signature)_
Authorized Representative

## Houston Casualty Company
Houston, TX

| Endorsement Effective Date | Policyholder | Policy Number | Endorsement |
|---|---|---|---|
| **12/26/2016** | **PMTD Restaurants LLC; RFM Enterprises Inc; Champion Restaurants-Fiesta LLC; EPS Restaurants LLC; Lincoln Gasoline Operating LLC DBA KFC & Taco Bell** | **H716-915480** | **EP 0044** |

remain unchanged.

by

Authorized Representative

## Houston Casualty Company
### Houston, TX

| Endorsement Effective Date | Policyholder | Policy Number | Endorsement |
|---|---|---|---|
| 12/26/2016 | **PMTD Restaurants LLC; RFM Enterprises Inc; Champion Restaurants-Fiesta LLC; EPS Restaurants LLC; Lincoln Gasoline Operating LLC DBA KFC & Taco Bell** | **H716-915480** | **EP 0062** |

"This contract is registered and delivered as a surplus line coverage under the Alabama Surplus Line Insurance Law."

**THIS ENDORSEMENT CHANGES YOUR POLICY. PLEASE READ IT CAREFULLY.**

**THIRD PARTY DISCRIMINATION AND HARASSMENT COVERAGE ENDORSEMENT**

This endorsement modifies your Policy as follows:

**Policy Limits Modification**

Only as respects the additional coverage provided by this endorsement, if the total Policy Limit, for all "claims" (including "defense costs") indicated at Item 4. of the Declarations is greater than $1,000,000, then that amount is deleted and replaced by the amount of $1,000,000. Therefore, the aggregate maximum amount we will pay for all "claims" under this endorsement is $1,000,000 or if a lesser amount, the Total Policy Limit indicated at Item 4. of the Declarations.

**Policy Form Modifications**

Only as respects the additional coverage provided by this endorsement the following sections or subsections of the Policy are deleted:

**SECTION I - COVERAGE, Item 1.a.**

**SECTION II – EXCLUSIONS, entire section**

**SECTION V – RETENTION, Item 4.**

**SECTION VI - CONDITIONS, Item 2.a.**

**SECTION IX - DEFINITIONS, Items 1, 5, 7, 9, 12 and 15.**

and replaced by the following:

**SECTION I - COVERAGE**

**Houston Casualty Company**
**Houston, TX**

| Endorsement Effective Date | Policyholder | Policy Number | Endorsement |
|---|---|---|---|
| 12/26/2016 | **PMTD Restaurants LLC; RFM Enterprises Inc; Champion Restaurants-Fiesta LLC; EPS Restaurants LLC; Lincoln Gasoline Operating LLC DBA KFC & Taco Bell** | **H716-915480** | **EP 0062** |

1. **Insuring Agreement**

   a. By this endorsement the Policy covers "discrimination" and "harassment" liability that the insured is legally obligated to pay to:

   (1)  an existing or former client, customer or patient, or

   (2)  any other person(s), within the terms, conditions, limitations and exclusions set forth in this endorsement and the Policy to which it is attached. This endorsement has been issued in reliance upon statements made to us in the "application".

**SECTION II – EXCLUSIONS**

1. **Workers' Compensation**

   Coverage provided by this Endorsement does not include coverage for any "loss" arising out of any obligation under any workers' compensation, disability benefits or unemployment compensation law, or any similar law.

2. **Contractual Liability**

   Coverage provided by this Endorsement does not include coverage for any "loss" which any insured is obligated to pay be reason of the assumption of another's liability for an "insured event" in a contract or agreement.

   This exclusion does not apply to liability for damages because of an "insured event" that any insured would have without the contract or agreement.

3. **Consequential Loss**

   Coverage provided by this Endorsement does not include coverage for any direct, indirect or derivative "loss" to any claimant's domestic partner, spouse, child, parent , brother , sister, step-parent, step-brother or step-sister as a consequence of an "insured event."

4. **Bodily Injury**

**Houston Casualty Company**
Houston, TX

| Endorsement Effective Date | Policyholder | Policy Number | Endorsement |
|---|---|---|---|
| 12/26/2016 | **PMTD Restaurants LLC; RFM Enterprises Inc; Champion Restaurants-Fiesta LLC; EPS Restaurants LLC; Lincoln Gasoline Operating LLC DBA KFC & Taco Bell** | **H716-915480** | **EP 0062** |

Coverage provided by this Endorsement does not include coverage for any "loss" based upon bodily injury, sickness, disease or death of any person, or loss of use or economic benefits resulting therefrom. This exclusion, however, does not apply to emotional distress, humiliation, mental injury or mental anguish resulting from an "insured event".

**5.      Retroactive Date**

Coverage provided by this Endorsement does not include any "loss" based on an "insured event" which occurs prior to the **RETROACTIVE DATE** indicated below on this Endorsement.

**SECTION V – RETENTION**

**4.**      The **RETENTION** amount applies separately to each "claim" made.  However, the **RETENTION** amount will only apply once to all "claims" arising out of any "one insured event", other than "insured events" alleging disability discrimination at one or more of the Insured's buildings or properties, regardless of the number of claimants who allege damages.

**SECTION VI - SPECIAL CONDITIONS**

We have no duty to provide coverage under this endorsement unless there has been full compliance with all of the conditions contained in this endorsement and the Policy.

**2.      Duties in the event of a "claim", or potential "claim" or "suit".**

**a.**      You must see to it that we or our authorized representative are notified within sixty (60) days or as soon as practicable after a "claim" is made.  Notice should include:

**(1)**      The identity of the person(s) alleging "discrimination" or "harassment";

**(2)**      The identity of the insured(s) who allegedly committed the "discrimination" or "harassment" act;

**(3)**      The identity of any witness to the alleged "discrimination" or "harassment";

## Houston Casualty Company
### Houston, TX

| Endorsement Effective Date | Policyholder | Policy Number | Endorsement |
|---|---|---|---|
| 12/26/2016 | **PMTD Restaurants LLC; RFM Enterprises Inc; Champion Restaurants-Fiesta LLC; EPS Restaurants LLC; Lincoln Gasoline Operating LLC DBA KFC & Taco Bell** | **H716-915480** | **EP 0062** |

**(4)**     The date the "insured event" took place, and the date the alleged "discrimination" or "harassment" took place; and

**(5)**     The written charge, complaint or demand as applicable.

## SECTION IX - DEFINITIONS

As respects the coverage provided under this endorsement the following definitions are modified or added:

**1.**     "Application" means the Third Party Discrimination and Harassment Supplemental Application, including any materials submitted in connection with such "application", all of which are on file with us and are a part of the Policy, as if physically attached.

**5.**     "Discrimination" means the taking of any adverse or differential action(s) by an "employee" of the insured because of race, color, religion, age, sex, pregnancy, sexual orientation or preference, national origin, or disability including a disability resulting from human immunodeficiency virus (HIV) or acquired immune deficiency syndrome (AIDS), or any other basis prohibited by federal, state or local law.

**7.**     "Harassment" means unwelcome sexual or non-sexual advances, requests for sexual or non-sexual favors or other verbal, visual or physical conduct of a sexual or non-sexual nature made to an existing or former client, customer or patient, or any other person(s) by an "employee" of the insured that:

   **a.**     are explicitly or implicitly made a condition of doing business,

   **b.**     are used as a basis for business decisions, or

   **c.**     create an environment that interferes with individual comfort or performance.

**9.**     "Insured Event" means your existing or former client, customer or patient, or any other person(s) alleging, during the policy period, "discrimination" and/or "harassment" by:

   **a.**     an "employee" during the course of his or her employment by you, or

## Houston Casualty Company
### Houston, TX

| Endorsement Effective Date | Policyholder | Policy Number | Endorsement |
|---|---|---|---|
| 12/26/2016 | **PMTD Restaurants LLC; RFM Enterprises Inc; Champion Restaurants-Fiesta LLC; EPS Restaurants LLC; Lincoln Gasoline Operating LLC DBA KFC & Taco Bell** | **H716-915480** | **EP 0062** |

**b.**     "discrimination" by any other insured; provided always such allegation relates to "discrimination" and/or "harassment" which first commenced on or after the **RETROACTIVE DATE** indicated on page 6 of this endorsement.

**12.**     "Loss" means damages, judgments, settlements, statutory attorney fees and "defense costs", including prejudgment and post judgment interest awarded against an insured on that part of any judgment paid by us.

However, "loss" does not include:

**a.**     civil or criminal fines or penalties imposed by law that are not otherwise insurable, or

**b.**     non-monetary relief, or

**c.**     liquidated damages where there is a finding of willfulness, or

**d.**     punitive or exemplary damages where such damages are not insurable because of state or federal law, or

**e.**     costs incurred by an insured to modify or adapt any building or property in order to make such building  or property more accessible or accommodating to any disabled person, or

**f.**     matters which may be deemed uninsurable according to the law under which this Policy is construed, or

**g.**     amounts owed under federal, state or local wage and hour laws, and/or earned commissions, bonuses, stock options, profit sharing or benefits pursuant to a contract of employment.

"One Insured Event" means:

**a.**     "insured events" which are (1) related by an unbroken chain of events or (2) made or brought by the same claimant, other than those alleging disability discrimination at one or more of the Insured's buildings or properties; or

**Houston Casualty Company**
**Houston, TX**

| Endorsement Effective Date | Policyholder | Policy Number | Endorsement |
|---|---|---|---|
| 12/26/2016 | **PMTD Restaurants LLC; RFM Enterprises Inc; Champion Restaurants-Fiesta LLC; EPS Restaurants LLC; Lincoln Gasoline Operating LLC DBA KFC & Taco Bell** | **H716-915480** | **EP 0062** |

    **b.**      class action or multiple plaintiffs suits arising out of related "insured events", other than those alleging disability discrimination at one or more of the Insured's buildings or properties.

**24.**    "Alleging" means lodging a complaint or charge with your "Management and Supervisors" or with any government agency, or commencing a "suit".

RETROACTIVE DATE:  N/A

This endorsement changes the Policy to which it is attached effective on the inception date of the Policy unless a different date is indicated above. All other terms and conditions of this Policy remain unchanged.

by _____
Authorized Representative

EP 0062  (07/03)           Page 6 of 6

## Houston Casualty Company
### Houston, TX

| Endorsement Effective Date | Policyholder | Policy Number | Endorsement |
|---|---|---|---|
| 12/26/2016 | **PMTD Restaurants LLC; RFM Enterprises Inc; Champion Restaurants-Fiesta LLC; EPS Restaurants LLC; Lincoln Gasoline Operating LLC DBA KFC & Taco Bell** | **H716-915480** | **EP 00CMR** |

> **"This contract is registered and delivered as a surplus line coverage under the Alabama Surplus Line Insurance Law."**

### THIS ENDORSEMENT CHANGES YOUR POLICY.
### PLEASE READ IT CAREFULLY.

**CLAIMS MADE & REPORTED COVERAGE ENDORSEMENT**

This Endorsement modifies the Policy as follows:

**SECTION VII - WHEN COVERAGE IS PROVIDED**, paragraph **1.** is deleted in its entirety and replaced with the following:

**SECTION VII - WHEN COVERAGE IS PROVIDED**

1.   **Claims Made and Reported Coverage**.  This Policy applies only to "claims" first made or brought against you and reported to us, in writing, within the Policy Period set forth on the Declarations page of this Policy or any Limited or Extended Reporting Period (if applicable).

     A "claim" will be considered first made or brought on the date we or any insured receives a written "claim" whichever comes first.

     All "claims" because of "one insured event" will be considered to have been made or brought on the date that the first of those "claims" was made or brought.  Any "claim" arising out of an "insured event" reported to us pursuant to paragraph 2 will be deemed first made on the date notice of the "insured event" was given to us.

Further, **SECTION VI - CONDITIONS**, paragraphs **2.a.** and **2.b.** are deleted in their entirety and replaced with the following:

**SECTION VI-CONDITIONS**

2.   Duties in the event of a "claims" or "suit".

by _(signature)_
Authorized Representative

## Houston Casualty Company
Houston, TX

| Endorsement Effective Date | Policyholder | Policy Number | Endorsement |
|---|---|---|---|
| 12/26/2016 | **PMTD Restaurants LLC; RFM Enterprises Inc; Champion Restaurants-Fiesta LLC; EPS Restaurants LLC; Lincoln Gasoline Operating LLC DBA KFC & Taco Bell** | **H716-915480** | **EP 00CMR** |

 

    a.   You must see to it that we receive written notice of a "claim" as soon as practicable, but in no event after the expiration of the Policy Period.  Notice should include:

        (1)   The identity of the person(s) alleging "discrimination", "harassment" or "inappropriate employment conduct";

        (2)   The identity of the insured(s) who allegedly committed the "discrimination", "harassment" or "inappropriate employment conduct";

        (3)   The identity of any witness to the alleged "discrimination", "harassment" or "inappropriate employment conduct";

        (4)   The date the "insured event" took place; and

        (5)   The written charge, complaint or demand as applicable.

    b.   If a "suit" is brought against any insured, you must see to it that we receive written notice of such "suit", including the specifics of the "suit" and the date received, as soon as practicable, but in no event after the expiration of the Policy Period.

This Endorsement changes the Policy to which it is attached effective on the inception date of the Policy unless a different date is indicated below. All other terms and conditions of this Policy remain unchanged.
**(The following is required only when this Endorsement is issued subsequent to preparation of the policy.)**

by _(signature)_
Authorized Representative

**Houston Casualty Company**
Houston, TX

| Endorsement Effective Date | Policyholder | Policy Number | Endorsement |
|---|---|---|---|
| 12/26/2016 | **PMTD Restaurants LLC; RFM Enterprises Inc; Champion Restaurants-Fiesta LLC; EPS Restaurants LLC; Lincoln Gasoline Operating LLC DBA KFC & Taco Bell** | **H716-915480** | **EP 528** |

"This contract is registered and delivered as a surplus line coverage under the Alabama Surplus Line Insurance Law."

**THIS ENDORSEMENT CHANGES YOUR POLICY.  PLEASE READ IT CAREFULLY.**

**WAGE AND HOUR LAWS LEGAL DEFENSE COSTS
ENDORSEMENT WITH RETROACTIVE DATE**

This Endorsement modifies your Policy as follows:

**SECTION II, Exclusion 11.** is deleted in its entirety and replaced by the following:

**11.     Wage and Hour Laws**

   **a.**  This Policy does not cover any "loss" arising out of any private, governmental or administrative "claim" alleging violations of federal, state or local wage and hour laws or regulations, including, but not limited to, any laws or regulations concerning monetary or non-monetary compensation or benefits that may be owed to a past or present "employee" based upon misclassification of their job status, title or duties.

   **b.**  However, we will pay "defense costs" up to, but in no event greater than $100,000 in the aggregate for all "claims" made during this Policy Period and excluded by **a.** above without any liability by us to pay such monetary portion that you shall become legally obligated to pay because of any damages, judgment or settlement, including punitive damages.  The $100,000 "defense costs" provided under this Endorsement is part of and not in addition of the Limits of Liability stated in the Declarations.

   **c.**  Paragraph **a.**, above, shall not apply to that portion of any "claim" seeking to recover "loss" for alleged "discrimination" or "retaliation" by an Insured.

**SECTION IX – DEFINITIONS**, 2. is deleted in its entirety and replaced by the following solely for the purposes of the coverage provided by this Endorsement:

   **2.**     "Claim" means a written demand received by the insured alleging damages or the filing of a lawsuit, or a federal, state or local administrative proceeding alleging violation of federal, state or local wage and hour laws or regulations.  However,

by _(signature)_
Authorized Representative

**Houston Casualty Company**
Houston, TX

| Endorsement Effective Date | Policyholder | Policy Number | Endorsement |
|---|---|---|---|
| 12/26/2016 | **PMTD Restaurants LLC; RFM Enterprises Inc; Champion Restaurants-Fiesta LLC; EPS Restaurants LLC; Lincoln Gasoline Operating LLC DBA KFC & Taco Bell** | **H716-915480** | **EP 528** |

"claim" does not include (1) labor or grievance arbitration subject to a collective bargaining agreement; (2) criminal charges or proceeding; or (3) any regulatory or administrative investigation or audit.

The coverage afforded by this Endorsement does not apply to any "claim" alleging violations of federal, state or local wage and hour laws or regulations which occurred or are alleged to have occurred prior to the Retroactive Date set forth below.

**Retroactive Date: 12/26/2012**

**Additional Premium: $ 0.00**

This Endorsement changes the Policy to which it is attached effective on the inception date of the Policy unless a different date is indicated above. All other terms and conditions of this Policy remain unchanged.

by _____
Authorized Representative

## Houston Casualty Company
Houston, TX

| Endorsement Effective Date | Policyholder | Policy Number | Endorsement |
|---|---|---|---|
| 12/26/2016 | **PMTD Restaurants LLC; RFM Enterprises Inc; Champion Restaurants-Fiesta LLC; EPS Restaurants LLC; Lincoln Gasoline Operating LLC DBA KFC & Taco Bell** | **H716-915480** | **TRIA (2015)** |

"This contract is registered and delivered as a surplus line coverage under the Alabama Surplus Line Insurance Law."

**THIS ENDORSEMENT CHANGES YOUR POLICY.  PLEASE READ IT CAREFULLY.**

**POLICYHOLDER DISCLOSURE NOTICE**
**TERRORISM RISK INSURANCE ACT OF 2015**
**PREMIUM NOTICE**

Your policy contains coverage for certain losses caused by terrorism.  In accordance with the federal Terrorism Risk Insurance Act, we are required to provide you with a notice disclosing the portion of your premium, if any, attributed to coverage for terrorist acts certified under the Terrorism Risk Insurance Act. The portion of your premium attributed to such coverage is show in the Schedule of this endorsement or in the policy Declarations.

The United States Government, Department of the Treasury, will pay a share of terrorism losses insured under the federal program. The federal share equals a percentage (as shown in Part II of the Schedule of this endorsement) of that portion of the amount of such insured losses that exceeds the applicable insurer retention. However, if aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a calendar year, the Treasury shall not make any payment for any portion of the amount of such losses that exceeds $100 billion.

If aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a calendar year and we have met our insurer deductible under the Terrorism  Risk Insurance  Act,  we  shall  not  be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

**SCHEDULE- PART I**

**Terrorism Premium (Certified Acts): $ 0.00**

by _____
Authorized Representative

# Houston Casualty Company
Houston, TX

| Endorsement Effective Date | Policyholder | Policy Number | Endorsement |
|---|---|---|---|
| **12/26/2016** | **PMTD Restaurants LLC; RFM Enterprises Inc; Champion Restaurants-Fiesta LLC; EPS Restaurants LLC; Lincoln Gasoline Operating LLC DBA KFC & Taco Bell** | **H716-915480** | **TRIA (2015)** |

**SCHEDULE-PART II**

Federal share of terrorism losses 85% Year: 2015
Federal share of terrorism losses 84% Year: 2016
Federal share of terrorism losses 83% Year: 2017
Federal share of terrorism losses 82% Year: 2018
Federal share of terrorism losses 81% Year: 2019
Federal share of terrorism losses 80% Year: 2020

Please be advised that the actual coverage provided by your Policy for acts of terrorism, as is true for all coverages, is limited by terms, conditions, exclusions, limits, other provisions of your Policy, any endorsements to the Policy and generally applicable rules of law.

All other terms and conditions remain unchanged.

by _____
Authorized Representative

# Houston Casualty Company
## Houston, TX

| Endorsement Effective Date | Policyholder | Policy Number | Endorsement |
|---|---|---|---|
| 12/26/2016 | **PMTD Restaurants LLC; RFM Enterprises Inc; Champion Restaurants-Fiesta LLC; EPS Restaurants LLC; Lincoln Gasoline Operating LLC DBA KFC & Taco Bell** | **H716-915480** | **EP 406** |

"This contract is registered and delivered as a surplus line coverage under the Alabama Surplus Line Insurance Law."

## SPECIFIC LOCATION EXCLUSIONARY ENDORSEMENT

This Endorsement modifies your Policy as follows:

It is hereby understood and agreed that there is no coverage under this Policy or any Endorsement thereto for any "claim" based upon, arising out of or in any way involving the operation of the following location:

3005 20th Ave, Valley AL 36854
706 Elbert St Elberton Ga 30635
3007 20th Ave Vally AL 36854
500 Cherry Street Attalla, AL 35954
305 E. 10th Street West Point, GA 31833

This Endorsement changes the Policy to which it is attached effective on the inception date of the Policy unless a different date is indicated below. All other terms and conditions of this Policy remain unchanged.

by _____
Authorized Representative

EP 406  8/11                          Page 1 of 1

# Houston Casualty Company
Houston, TX

| Endorsement Effective Date | Policyholder | Policy Number | Endorsement |
|---|---|---|---|
| 12/26/2016 | **PMTD Restaurants LLC; RFM Enterprises Inc; Champion Restaurants-Fiesta LLC; EPS Restaurants LLC; Lincoln Gasoline Operating LLC DBA KFC & Taco Bell** | **H716-915480** | **EP 00IM** |

"This contract is registered and delivered as a surplus line coverage under the Alabama Surplus Line Insurance Law."

**THIS ENDORSEMENT CHANGES YOUR POLICY.  PLEASE READ IT CAREFULLY.**

**IMMIGRATION COVERAGE EXTENSION/DEFENSE SUB-LIMIT**

**In consideration of the premium charged, it is agreed that**:

If the Insured(s) become legally obligated to pay a "claim" for which coverage is afforded otherwise under this policy alleging violations of the Immigration Reform Control Act of 1986 ("IRCA") or any other similar federal, state or local laws or regulations (collectively "immigration practices laws") which is first made against any Insured in accordance with Sections VII. (WHEN COVERAGE IS PROVIDED) and VIII. (COVERAGE TERRITORY) of the Policy, we will pay "defense costs".

The coverage afforded by this Endorsement shall apply solely to "defense costs" and is subject to a sub-Limit of Liability of $50,000 in the aggregate for all "claims" made during the Policy Period, which is part of and not in addition to the Limit of Liability set forth in the Declarations. The Retention set forth in the Declarations applies to each "claim" for which coverage is provided by this Endorsement.  In no event shall the sub-limit provided for by this Endorsement (or the coverage provided for herein) apply to any "loss" incurred in connection with any "claim" alleging violations of "immigration practices laws," and in no event shall we be obligated to pay more than the Limit of Liability set forth in the Declarations.

Notwithstanding the above, no coverage shall be available for any "claim" alleging violations of any "immigration practices laws," which arises from any potential "claim" or circumstances of which any "management or supervisory employee," in-house counsel, any employee(s) within the HR or Risk Management department, or employee(s) with personnel and risk management responsibilities had knowledge prior to the inception date of this Policy Period.

Coverage pursuant this Endorsement is conditioned upon the Insured's compliance with the rules and regulations promulgated by the Department of Homeland Security ("DHS") and the U.S. Immigration and Customs Enforcement ("ICE") concerning responses to Social Security Administration Employee Correction Requests ("no match letters") or the DHS Notice of Suspect Documents.

by _____
Authorized Representative

# Houston Casualty Company
Houston, TX

| Endorsement Effective Date | Policyholder | Policy Number | Endorsement |
|---|---|---|---|
| **12/26/2016** | **PMTD Restaurants LLC; RFM Enterprises Inc; Champion Restaurants-Fiesta LLC; EPS Restaurants LLC; Lincoln Gasoline Operating LLC DBA KFC & Taco Bell** | **H716-915480** | **EP 00IM** |

This Endorsement changes the Policy to which it is attached effective on the inception date of the Policy unless a different date is indicated above. All other terms and conditions of this Policy remain unchanged.

by _(signature)_
Authorized Representative

**Houston Casualty Company**
Houston, TX

| Endorsement Effective Date | Policyholder | Policy Number | Endorsement |
|---|---|---|---|
| 12/26/2016 | **PMTD Restaurants LLC; RFM Enterprises Inc; Champion Restaurants-Fiesta LLC; EPS Restaurants LLC; Lincoln Gasoline Operating LLC DBA KFC & Taco Bell** | **H716-915480** | **EP 0050** |

*"This contract is registered and delivered as a surplus line coverage under the Alabama Surplus Line Insurance Law."*

**THIS ENDORSEMENT CHANGES YOUR POLICY.  PLEASE READ IT CAREFULLY.**

**FRANCHISEE PROGRAM ENDORSEMENT**

In consideration of the Premium charged, it is hereby understood and agreed that your Policy is modified as follows:

1. If the Named Insured is operating a business under a written franchise agreement with a franchisor who provides a licensed privilege to operate such business, Section II. Exclusions 2. of this Policy is deleted in its entirety and replaced as follows:

    **2.  Contractual Liability**

    This Policy does not cover any "loss" which any insured is obligated to pay by reason of the assumption of another's liability for an "insured event" in any contract or agreement, including but not limited to any franchise or license agreement, unless such liability would have attached in the absence of such contract or agreement.

    Notwithstanding the above, we will provide reimbursement for "defense costs" up to, but in no event greater than $100,000 in the aggregate, which amount is part of and not in addition to the Limits of Insurance, which the Named Insured is obligated to pay the franchisor under any franchise or license agreement to pay "defense costs" in the event the franchisor is named as a defendant in a lawsuit, other than a class action, provided always that such lawsuit also names and is continuously maintained against the Named Insured because of an "insured event."  This coverage will only apply if the franchisor is (a) dismissed from the lawsuit prior to settlement of such lawsuit, (b) is not a party to the settlement agreement, and (c) owes no damages or settlement to the plaintiff in such lawsuit.  The Company has no duty to advance "defense costs" provided for by this Endorsement and reimbursement of same shall occur only upon final non-appealable dismissal.

2. Section **II - EXCLUSIONS** is amended by the addition of the following Exclusion:

by _____
Authorized Representative

## Houston Casualty Company
### Houston, TX

| Endorsement Effective Date | Policyholder | Policy Number | Endorsement |
|---|---|---|---|
| 12/26/2016 | **PMTD Restaurants LLC; RFM Enterprises Inc; Champion Restaurants-Fiesta LLC; EPS Restaurants LLC; Lincoln Gasoline Operating LLC DBA KFC & Taco Bell** | **H716-915480** | **EP 0050** |

This Policy does not cover any "loss," including "defense costs," based on or arising out of any actual or purported class action lawsuit or administrative proceeding brought by or on behalf of a class or group of claimants which names any franchisor or franchisee other than the Named Insured(s).

3.      Section IV. Limits of Insurance, Item 2. is amended by the addition of the following:

If any "claim" made against any insured gives rise to coverage under this Policy and under any other policy or policies affording coverage for any employment practices liability or similar insurance issued by us, our maximum aggregate Limit of Insurance with respect to all such policies, including this Policy, for all "loss," including "defense costs," in respect of such "claim" shall not exceed the largest single available Limit of Insurance under any such policies.

All other terms, conditions and limitations of this Policy shall remain unchanged.

This Endorsement changes the Policy to which it is attached effective on the inception date of the Policy unless a different date is indicated above. All other terms and conditions of this Policy remain unchanged.

by

Authorized Representative

## Houston Casualty Company
Houston, TX

| Endorsement Effective Date | Policyholder | Policy Number | Endorsement |
|---|---|---|---|
| 12/26/2016 | **PMTD Restaurants LLC; RFM Enterprises Inc; Champion Restaurants-Fiesta LLC; EPS Restaurants LLC; Lincoln Gasoline Operating LLC DBA KFC & Taco Bell** | **H716-915480** | **EP NSOL** |

"This contract is registered and delivered as a surplus line coverage under the Alabama Surplus Line Insurance Law."

**THIS ENDORSEMENT CHANGES YOUR POLICY. PLEASE READ IT CAREFULLY.**

**NON-STACKING OF LIMITS ENDORSEMENT**

THIS ENDORSEMENT MODIFIES YOUR POLICY AS FOLLOWS:

**Section IV. Limits of Insurance, Item 2.** is amended by the addition of the following:

If any "claim" made against any insured gives rise to coverage under this Policy and under any other policy or policies affording coverage for any employment practices liability or similar insurance issued by us, our maximum aggregate Limit of Insurance with respect to all such policies, including this Policy, for all "loss", including "defense costs", in respect of such "claim" shall not exceed the largest single available Limit of Insurance under any such policies.

 This endorsement changes the Policy to which it is attached effective on the inception date of the Policy unless a different date is indicated below. All other terms and conditions of this Policy remain unchanged.

by _(signature)_
Authorized Representative

## Houston Casualty Company
### Houston, TX

| Endorsement Effective Date | Policyholder | Policy Number | Endorsement |
|---|---|---|---|
| 12/26/2016 | **PMTD Restaurants LLC; RFM Enterprises Inc; Champion Restaurants-Fiesta LLC; EPS Restaurants LLC; Lincoln Gasoline Operating LLC DBA KFC & Taco Bell** | **H716-915480** | **EP 532** |

> "This contract is registered and delivered as a surplus line coverage under the Alabama Surplus Line Insurance Law."

**THIS ENDORSEMENT  CHANGES  YOUR  POLICY.  PLEASE READ IT**

**CAREFULLY.**

**SPECIFIC ENTITY/LOCATION(S)  WITH  RETROACTIVE  DATE  ENDORSEMENT**

This Endorsement modifies your Policy as follows:

The following applies to the Entity(ies) and/or Location(s) listed below:

777 TOWNPARK LANE, STE 104

KENNESAW, GA 30144

Coverage under this Policy and any/or any Endorsement thereto for the above-listed entities and/or locations is limited to "claims" based upon circumstances or "insured events" which take place on or after the Retroactive Date listed below.

Retroactive Date: 10/01/2016

Additional Premium: $

This Endorsement changes the Policy to which it is attached effective on the inception date of this Policy unless a different date is indicated above. All other terms and conditions of this Policy remain unchanged.

by _____
Authorized Representative

## Houston Casualty Company
### Houston, TX

| Endorsement Effective Date | Policyholder | Policy Number | Endorsement |
|---|---|---|---|
| 12/26/2016 | **PMTD Restaurants LLC; RFM Enterprises Inc; Champion Restaurants-Fiesta LLC; EPS Restaurants LLC; Lincoln Gasoline Operating LLC DBA KFC & Taco Bell** | **H716-915480** | **EP 532** |

**"This contract is registered and delivered as a surplus line coverage under the Alabama Surplus Line Insurance Law."**

**THIS ENDORSEMENT CHANGES YOUR POLICY. PLEASE READ IT**

**CAREFULLY.**

**SPECIFIC ENTITY/LOCATION(S) WITH RETROACTIVE DATE ENDORSEMENT**

This Endorsement modifies your Policy as follows:

The following applies to the Entity(ies) and/or Location(s) listed below:

75837 AL HWAY 77

LINCOLN, AL  35096

Coverage under this Policy and any/or any Endorsement thereto for the above-listed entities and/or locations is limited to "claims" based upon circumstances or "insured events" which take place on or after the Retroactive Date listed below.

Retroactive Date: 12/07/2016

Additional Premium: $

This Endorsement changes the Policy to which it is attached effective on the inception date of this Policy unless a different date is indicated above. All other terms and conditions of this Policy remain unchanged.

by _Authorized Representative_

# *Franchise/Affinity Program*

**Employment Practices Liability Insurance**
**Houston Casualty Company/ U.S. Specialty Insurance Company**

 **HCC**

## *Renewal Application*

## Section 1. General Information          *Please type or print clearly*

| | |
|---|---|
| Name of Applicant: PMTD RESTAURANTS LLC, RFM ENTERPRISES INC, CHAMPION RESTAURANTS-FIESTA LLC, EPS RESTAURANTS LLC, LINCOLN GASOLINE OPERATING LLC | |

Business Entity Name:

| Mailing Address:3535 ROSWELL ROAD SUITE 52 | City MARIETTA | State GA | Zip Code 30062 |
|---|---|---|---|
| HR Contact Name: JOANN SPIERS | Telephone 770-578-8749 x1 | Fax770-971-8238 | |
| Email Address: JSPIERS@PMTD.COM | Number of Employees in Office 2 | | |

Applicant is a (check one)   ◇ Corporation   ◇ Partnership   ◇X LLC   ◇ Individual   ◇ Other_____

| Principal Product/Service:QSR | Name of Franchise/ Affinity Group: KFC and Taco Bell, Capriotti's, Marathon |
|---|---|
| Current HCC/USSIC PolicyNo: | Expiration Date: 12/25/2016 |

## Section 2. Location and Employee Information

*MUST COMPLETE* the *LOCATION* and *EMPLOYEE INFORMATION SCHEDULE* attached to this *APPLICATION*

Total Employees: 472          Full Time 191          Part Time 281

## Section 3. Human Resources   Procedures

**Have you formally adopted and implemented the following:**

| | | | |
|---|---|---|---|
| 1. | A written policy on anti-harassment and  procedures to reportharassment to management | XYes | ▢ No |
| 2. | A written policy and procedure on anti discrimination or an EEOC statement prohibiting discrimination | XYes | ▢ No |
| 3. | Utilize an employment application that contains an at-will provision | XYes | ▢ No |
| 4. | Scheduled Management and Supervisory workplace training on HR relates issues, including but not limited to anti-harassment and anti-discrimination and conflict resolution | XYes | ▢ No |
| 5. | Termination review by management, HR manager or outside HR professional or law firm | XYes | ▢ No |
| 6. | Are your facilities designed to accommodate the disabled in accordance with the Americans with Disabilities Act (ADA)law? | XYes | ▢ No |
| 7. | Does your organization anticipate any of the following in the nexttwelve (12) months? | ▢ Yes | XNo |

If Yes to any question pleaseexplain.
   ❑ Selling or closing any locations or operations? If yes, how many _____
   ❑ Acquiring or opening any new locations or operations? If yes, how many_____

## Section 4. Requested Limit Options

| Single Limit   Option: | 0 $250,000 | 0 $500,000 | X0 $1,000,000 | | |
|---|---|---|---|---|---|
| Aggregate Limit Option: | 0 $250,000 | 0 $500,000 | X0 $1,000,000 | 0 $2,000,000 | 0 $3,000,000 |
| **Retention Options:** | 0$5,000 | X0$10,000 | 0$25,000 | O Other $ _____ | |

($2,000,000 and $3,000,000 aggregate not available with a $250,000 single limit  option)

## Section 5. Applicant's Warrants and Signature

*I understand the Location and Employee Information Schedule form will become part of my organization's Employment Practices Liability Application and is subject to the same representations and  conditions.*

*The Applicant warrants to the best of its knowledge and belief that the statements set forth herein are true and include all material information.   The  undersigned authorized officer of    the Applicant hereby acknowledges that he/she is aware that the limit of liability contained in this policy shall be reduced, and may be completely exhausted, by the costs of  legal  defense and, in such event, the Insurer shall not be liable for the costs of legal defense or for the   amount of any judgment or settlement to the extent that such exceeds the limit of liability of this policy. The undersigned authorized officer of the Applicant hereby further acknowledges  that he/she is aware that legal defense that are incurred shall be applied against the retention amount.*

*The Applicant further warrants that if the information supplied on this application changes between the date of the application and the inception date of the policy, the Applicant will immediately notify the underwriters. It is agreed that this application shall be the basis of insurance and will be attached and made a part of the policy should a policy be    issued.*

| 12/14/16 | | OFFICE MANAGER |
|---|---|---|
| *Date* | *Applicant's Authorized Signature* | *Title* |

*Signature and date cannot be more than 30 days old from the effective date of coverage*

## EMPLOYMENT PRACTICES LIABILITY INSURANCE
## LOCATION AND EMPLOYEE INFORMATION  SCHEDULE



**INSTRUCTIONS:**

List all locations to be covered by the policy for which you are applying.

| | LOCATION TYPE | Store No | Entity Address | EMPLOYEES FULL TIME | PART TIME |
|---|---|---|---|---|---|
| 1. | O  Full Unit<br>O  Non-Standard Unit<br>O  24 Hour Unit | | LISTING ATTACHED | | |
| 2. | O  Full Unit<br>O  Non-Standard Unit<br>O  24 Hour Unit | | | | |
| 3. | O  Full Unit<br>O  Non-Standard Unit<br>O  24 Hour Unit | | | | |
| 4. | O  Full Unit<br>O  Non-Standard Unit<br>O  24 Hour Unit | | | | |
| 5. | O  Full Unit<br>O  Non-Standard Unit<br>O  24 Hour Unit | | | | |
| 6. | O  Full Unit<br>O  Non-Standard Unit<br>O  24 Hour Unit | | | | |
| 7. | O  Full Unit<br>O  Non-Standard Unit<br>O  24 Hour Unit | | | | |
| 8. | O  Full Unit<br>O  Non-Standard Unit<br>O  24 Hour Unit | | | | |
| 9. | O  Full Unit<br>O  Non-Standard Unit<br>O  24 Hour Unit | | | | |
| 10. | O  Full Unit<br>O  Non-Standard Unit<br>O  24 Hour Unit | | | | |
| | | | Totals | | |

*I understand the Location and Employee Information Schedule form will become part of my organization's Employment Practices Liability Application and is subject to the same representations and   conditions.*

| | STORE NUMBER | ADDRESS | CITY | STATE | ZIP CODE | GA | | AL | |
|---|---|---|---|---|---|---|---|---|---|
| | | | | | | FULL TIME (64+ hours) | PART TIME | FULL TIME (64+ hours) | PART TIME |
| **PMTD Restaurants LLC** | | | | | | | | | |
| Owner's payroll | | 3901 Roswell Road - Suite 315 | Marietta | GA | 30062 | 5 | 1 | 1 | 0 |
| Alex City | D241001 | 955 Airport Rd. | Alexander City | AL | 35010 | | | 5 | 18 |
| Talladega | D241002 | 219 Haynes Street | Talladega | AL | 35160 | | | 8 | 7 |
| Leeds | D241003 | 1816 Ashville Rd. NE | Leeds | AL | 35094 | | | 4 | 12 |
| Valley | D241004 | 3006 20th Avenue | Valley | AL | 36854 | 1 | 2 | 9 | 18 |
| Auburn | D241007 | 1580 Opelika Road | Auburn | AL | 36830 | | | 5 | 11 |
| Thomaston | D241008 | 1051 Highway 19 North | Thomaston | GA | 30286 | 5 | 13 | | |
| Monroe | D241009 | 1100 West Spring Street | Monroe | GA | 30655 | 8 | 8 | | |
| Gainesville | D241010 | 1904 Browns Bridge Road | Gainesville | GA | 30501 | 6 | 7 | | |
| Elberton | D241011 | 253 Elbert Street | Elberton | GA | 30635 | 6 | 10 | | |
| Cornelia | D241012 | 1467 Hwy 441 Bypass | Cornelia | GA | 30531 | 7 | 9 | | |
| Toccoa | D241014 | 771 South Big A Road | Toccoa | GA | 30577 | 3 | 16 | | |
| Oakwood | D241018 | 3711 Mundy Mill Road | Oakwood | GA | 30566 | 6 | 5 | | |
| Winder | D241019 | 180 West Athens Street | Winder | GA | 30680 | 5 | 11 | | |
| Wetumpka | D241020 | 5278 US Highway 231 | Wetumpka | AL | 36092 | | | 7 | 7 |
| Millbrook | D241021 | 3226 Highway 14 | Millbrook | AL | 36054 | | | 10 | 5 |
| | | | | | | | | | |
| **RFM Enterprises, Inc** | | | | | | | | | |
| Pine Mountain | D241006 | 5700 Highway 354/Hwy 27 Chipley Village | Pine Mountain | GA | 31822 | 5 | 7 | 0 | 0 |
| | | | | | | | | | |
| **Champion Restaurants-Fiesta, LLC** | | | | | | | | | |
| Owner's payroll | | 3901 Roswell Road-Suite 315, Marietta GA | Marietta | GA | 30062 | | | 1 | 0 |
| Centre | J466001 | 1545 Chestnut Bypass | Centre | AL | 35960 | | | 5 | 19 |
| Southside | J466002 | 1560 Highway 77 | Southside | AL | 35907 | | | 14 | 10 |
| Hokes Bluff | J466003 | 5692 Highway 278E | Hokes Bluff | AL | 35903 | | | 9 | 9 |
| Piedmont | J466004 | 206 Highway 278 Bypass | Piedmont | AL | 36272 | | | 9 | 11 |
| Lincoln | J466005 | 75835 Highway 77 | Lincoln | AL | 35096 | | | 14 | 8 |
| Gadsden | J466006 | 579 E. Meighan Blvd. | E. Gadsden | AL | 35903 | | | 18 | 14 |
| Attalla TB | 024458 | 519 Cleveland Avenue | Attalla | AL | 35954 | | | 8 | 15 |
| | | | | | | | | | |
| **EPS Restaurants LLC** | | | | | | | | | |
| Kennesaw | 00141 | 777 Townpark Lane, Suite 104 | Kennesaw | GA | 30144 | 5 | 18 | | |
| | | | | | | | | | |
| **Lincoln Gasoline Operating LLC** | | | | | | | | | |
| Lincoln | 215434 | 75837 AL Highway 77 | Lincoln | AL | 35096 | | | 2 | 10 |
| | | | | | | 62 | 107 | 129 | 174 |
| | | | | | | 169 | | 303 | |
| | | | | | | 472 | | | |

# *Employment Practices Liability Insurance*

**HCC**

**Houston Casualty Companies/ U.S. Specialty Insurance Company**

*Wage and Hour Coverage Supplemental Form*

## WAGE & HOUR SUPPLEMENTAL APPLICATION

*Eligibility is subject to completion of the Wage and Hour Supplemental Application and underwriter approval. No backdating allowed for this coverage. Coverage must be elected at time of binding.*

| | | | |
|---|---|---|---|
| 1. | In the past five (5) years has any current or former employee made or threatened a claim for any violation of wage and hour laws, including but not limited to, claims related to meal periods, rest periods or unpaid overtime? If yes, please describe the outcome and how you have changed your practice to prevent claims (attach explanation if needed). | Yes ☐ | No ☒ |
| **Question 2 does NOT apply to current HCC renewals that have Wage & Hour coverage** | | | |
| 2. | Does any manager, supervisor, shareholder, partner or owner within your organization have knowledge of a potential violation of any wage and hour law that could result in a claim for any violation of wage and hour laws, including but not limited to, claims related to meal periods, rest periods or unpaid overtime? | Yes ☐ | No ☒ |
| 3. | In the last 3 years, has any insured received from the Department of Labor or similar federal, state or local agency notice of an audit or other regulatory or administrative investigation related to compliance with or violation of any federal, state or local wage and hour laws? | Yes ☐ | No ☒ |
| 4. | Are all your full time employees allowed to take a meal period of at least 30 minutes during which they are relieved of all duties? | Yes ☒ | No ☐ |
| **Questions 5-7 apply only to employers with employees located in CALIFORNIA:** | | | |
| 5. | Do any of your employees take on-duty meal periods? | Yes ☐ | No ☒ |
| 6. | Are all employees allowed to take a rest period of 10 minutes or more in the middle of each 4 hour work period? | Yes ☒ | No ☐ |
| 7. | Do all salaried employees receive a salary of at least $640 per week (ie: two times the minimum wage) which is not subject to reduction based upon the number of hours they work? | Yes ☒ | No ☐ |
| **Question 8 applies only to employers with employees located in NEW YORK:** | | | |
| 8. | Do all salaried employees receive a salary of at least $600 per week that is not subject to reduction based on the number of hours they work? | Yes ☒ N/X | No ☐ |
| **Question 9 applies only to employers with employees located in NEW JERSEY:** | | | |
| 9. | Do all salaried employees receive a salary of at least $455 per week that is not subject to reduction based on the number of hours they work? | Yes ☒ N/A | No ☐ |

*N/A*

I represent after full investigation and inquiry that the statements set forth are true and complete. I understand the information on this form will become a part of my organization's Employment Practices Liability Application and is subject to the same representations and conditions.

Applicant's Signature: _[signature]_          Date: 12·22-16



# EMPLOYMENT PRACTICES LIABILITY INSURANCE
# CLAIMS MADE AND REPORTED POLICY FORM

This Policy Form applies to the following
HCC Insurance Holdings, Inc. Companies:

- HOUSTON CASUALTY COMPANY
- U.S. SPECIALTY INSURANCE COMPANY
- HCC SPECIALTY INSURANCE COMPANY

---

## EMPLOYMENT PRACTICES
## LIABILITY INSURANCE
## CLAIMS-MADE POLICY FORM

---

## PLEASE READ THE ENTIRE POLICY CAREFULLY

**IMPORTANT NOTICES:**

**1.      THIS IS A CLAIMS-MADE POLICY.**

**2.      DEFENSE COSTS ARE INCLUDED WITHIN THE POLICY LIMITS AND ARE INCLUDED WITHIN THE RETENTION.**

**3.      THIS POLICY IS SUBJECT TO A TOTAL POLICY LIMIT FOR ALL INSURED EVENTS (POLICY AGGREGATE LIMIT).**

**4.      VARIOUS PROVISIONS IN THIS POLICY RESTRICT COVERAGE. READ THE ENTIRE POLICY CAREFULLY TO DETERMINE YOUR RIGHTS, DUTIES AND WHAT IS AND IS NOT COVERED.**

**THE FORMAT OF THIS POLICY**

Throughout this Policy the words "you" and "your" refer to the Named Insured shown in the Declarations and any other person or organization qualifying as an insured under this Policy. The words "we", "us" and "our" refer to the insurance company shown is the Declarations who is the **"Underwriter"** providing this insurance.

The word "insured" means any person or organization qualifying as such under **WHO IS AN INSURED (SECTION III)**.  The special meaning of other words and phrases that appear in quotation marks (") are defined in **DEFINITIONS (SECTION IX)** of this Policy.

To assist in finding major sections of this Policy, headings and subheadings appear in capital bold letters. The descriptions in these headings and subheadings are solely for convenience, and form no part of the terms, conditions, limitations and exclusions of this Policy.

## SECTION I - COVERAGE

**1.**   **Insuring Agreement**

    **a.**   This Policy covers "discrimination", "harassment" and "inappropriate employment conduct" liability within the terms, conditions, limitations and exclusions set forth below. It has been issued in reliance upon statements made to us in the "application".

    **b.**   We will pay "loss" that the insured is legally obligated to pay because of an "insured event" to which this Policy applies. However, the amount we will pay is limited as described in the **LIMITS OF INSURANCE (SECTION IV)**, and **RETENTION (SECTION V)** sections.

    **c.**   This Policy applies only if:

        **(1)**   a "claim" because of an "insured event" is first made against any insured in accordance with the **WHEN COVERAGE IS PROVIDED (SECTION VII)** and **COVERAGE TERRITORY (SECTION VIII)** sections; and

        **(2)**   a potential "claim" is first reported in accordance with the **WHEN COVERAGE IS PROVIDED (SECTION VII)** and **COVERAGE TERRITORY (SECTION VIII)** sections; and

        **(3)**   the "claim" is first reported in accordance with the **WHEN COVERAGE IS PROVIDED (SECTION VII)** and **COVERAGE TERRITORY (SECTION VIII)** sections, and

        **(4)**   the "insured event" does not arise from any potential "claim" or circumstances of which any "management or supervisory employee" had knowledge prior to the effective date of the first Employment Practices Liability Insurance policy issued by us to the insured and continuously renewed and maintained in effect to the inception date of this Policy.

**2.**   **Defense**

We have the right and duty to defend any "claim" for an "insured event" made or brought against any insured to which this Policy applies. We have no duty to provide other services or take other actions. Our duty to defend any "claim" ends when the applicable limit of insurance has been exhausted by payment of "loss" and/or "defense costs" under this Policy.

You may take over control of any outstanding "claim" previously reported to us only if we both agree that you should, or if a court orders you to do so.

If one or more of the applicable **LIMITS OF INSURANCE** shown in the Declarations is/are exhausted, we will notify you of all outstanding "claims" so that you can take over control of their defense. We will help transfer control to you.

During the transfer of control, we agree to take whatever steps are necessary to continue the defense of any outstanding "claim" and avoid a default judgment. If we do so, you agree that we do not waive or give up any of our rights. You also agree to pay reasonable expenses we incur for taking such steps after the **LIMITS OF INSURANCE** are exhausted.

**3.    Optional Defense of Criminal Proceedings**

At your request we shall have the option, but not the duty, to defend any criminal proceedings brought against any insured.  Should we at our sole discretion exercise the option to defend any criminal proceeding, any "defense costs" incurred therein shall reduce and may exhaust the applicable **LIMITS OF INSURANCE**.  The exercise of the option to defend any criminal proceeding shall not serve to render us liable for any other "loss incurred in connection with any criminal proceedings, and we shall retain the right to withdraw from the defense upon giving you thirty (30) days notice.  Whether or not we exercise the option to defend criminal proceedings, we shall defend, subject to this Policy's terms, conditions, limitations and exclusions, any civil proceeding brought against an insured which alleges the same or similar "insured events" as a criminal proceeding,

**4.    Defense Counsel (Attorney) Selection**

**a.**    We have the right and duty to select and appoint an attorney to defend you against any "suit" other than for criminal proceedings. This attorney will be the "Panel Defense Counsel" selected by you when you applied for this Policy or by mutual agreement another attorney listed on our current "Panel Defense Counsel" list.

**b.**    If you do not desire to accept the services of our appointed attorney or another attorney from our current "Panel Defense Counsel" list, you may retain another attorney, subject to our prior approval and the following modifications in the conditions of this Policy. If you elect to use an attorney other than one selected from our current "Panel Defense Counsel" list, then the Policy **RETENTION** indicated in the Declarations for this coverage will double in amount (i.e., a $5,000 retention will be $10,000) and a "co-payment" will apply.

**5.    Duty to Pay**

**a.**    We have the duty to pay any "loss" in excess of the **RETENTION** that the insured becomes legally obligated to pay as a result of a "claim" based upon an "insured event" to which this Policy applies. Our duty to pay ends when the available **LIMITS OF INSURANCE** have been exhausted. We will not pay more than the applicable **LIMITS OF INSURANCE**.

**b.**    We have the duty to pay "defense costs", in excess of the **RETENTION**, incurred for the defense of any "claim" controlled by us. Payment of "defense costs" is included in the **LIMITS OF INSURANCE**.  "Defense Costs" are **NOT** in addition to the **LIMITS OF INSURANCE**.

**c.**    We will pay "defense costs" before we pay any damages from an "insured event".

**6.    Consent to Settle**

We have the right to investigate and settle any "claim" in the manner and to the extent that we believe proper, however, we will not settle any "claim" without your consent. If you refuse to consent to any settlement recommended by us or our representatives and you elect to contest or continue any legal proceedings, then our liability shall not exceed the amount for which the "claim" could have been settled including "defense costs" approved by us, up to the date of such refusal.

However, in the event "Panel Defense Counsel" is defending, then our liability for all "loss" on account of such "claim" shall not exceed: (1) the amount for which we could have settled such "claim" plus "defense costs" incurred as of the date such settlement was proposed in writing by us, ("Total Settlement Amount"), plus (2) 50% of covered "loss" in excess of such Total Settlement Amount, it being a condition of this Policy that the remaining 50% of such "loss" excess of the Total Settlement Amount shall be carried by you at your own risk and be uninsured.

## SECTION II - EXCLUSIONS

1.  **Workers' Compensation**

    This Policy does not cover any "loss" arising out of any obligation under any workers' compensation, disability benefits or unemployment compensation law, or any similar law.

    This exclusion does not, however, apply to any "claim" for "retaliation" or "discrimination" or "inappropriate employment conduct" on account of the filing of a workers' compensation claim or a claim for disability benefits.

2.  **Contractual Liability**

    This Policy does not cover any "loss" which any insured is obligated to pay by reason of the assumption of another's liability for an "insured event" in a contract or agreement.

    This exclusion does not apply to liability for damages because of an "insured event" that any insured would have without the contract or agreement.

3.  **Employee Retirement Income Security Act (ERISA)**

    This Policy does not cover any "loss" imposed on any insured under the Employee Retirement Income Security Act of 1974, or any amendment thereto.  This includes fiduciary liability, liability arising out of the administration of any employee benefit plan and any other liability under any such law.

    This exclusion does not apply, however, to any "claim" for "retaliation" under section 510 of ERISA.

4.  **Strikes and Lockouts**

    This Policy does not cover any "loss" arising out of a strike, lockout, picket line, replacement or other similar action resulting from labor disputes or labor negotiations, or any protections contained within the National Labor Relations Act.

5.  **Consequential Loss**

    This Policy does not cover any direct, indirect or derivative "loss" to any claimant's domestic partner, spouse, child, parent, brother, sister, step-parent, step-brother or step-sister as a consequence of an "insured event."

**6.      Workers' Adjustment and Retraining Notification Act**

This Policy does not cover any "loss" arising out of the Workers' Adjustment and Retraining Notification Act, Public Law 100-379 (1988) or any amendment thereto, or any similar federal, state or local law.

**7.      Major Stockholders**

If the Named Insured is a corporation this Policy does not cover any "loss" arising out of a claim made by any "employee" who owns or controls twenty-five percent (25%) or more of the voting stock of the Named Insured.

**8.      Family Members**

If the Named Insured is an individual, a partnership with less than ten (10) partners, or a corporation with less than ten (10) stockholders this Policy does not cover any "loss" arising out of a "claim" made by any "employee" who is a domestic partner, spouse, child, parent, brother, sister, step-parent, step-brother or step-sister of:

   a.   the Named Insured listed in the Declarations;

   b.   any individual who owns or controls, directly or indirectly, more than 50% of the voting stock of the Named Insured; or

   c.   the trustees or beneficiaries of any trust created by the Named Insured, any individual described in paragraph b. or their relatives or representatives.

This exclusion shall apply, but is not limited to, any estate proceedings and divorce proceedings.

**9.      Bodily Injury**

This Policy does not cover any "loss" based upon bodily injury, sickness, disease or death of any person, or loss of use or economic benefits resulting therefrom.  This exclusion, however, does not apply to emotional distress, humiliation, mental injury or mental anguish resulting from an "insured event".

**10.     Comprehensive Omnibus Budget Reconciliation Act (COBRA)**

This Policy does not cover any "loss" imposed on any insured under the Comprehensive Omnibus Budget Reconciliation Act of 1985, or any amendment thereto.

This exclusion does not apply, however, to any "claim" for "retaliation" or "discrimination" or "inappropriate employment conduct" on account of the filing of a claim for benefits under COBRA.

**11.     Wage and Hour Laws**

This Policy does not cover any "loss" based upon or arising out of any private, governmental or administrative "claim" or "suit" alleging violation of federal, state or local wage and hour laws or regulations, including, but not limited to, any laws or regulations concerning monetary

or non-monetary compensation or benefits that may be owed to a past or present "employee" based upon a misclassification of their job status, title or duties.

This exclusion shall not apply, however, to any such "claim" or "suit" seeking to recover "loss" for alleged "discrimination" or "retaliation" by an "insured".

## SECTION III - INSURED

1.    **If you are designated in the Declarations as:**

   a.    An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

   b.    A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

   c.    A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business.

   d.    An organization other than a partnership, joint venture or limited liability company, you are an insured. Your stockholders are also insureds, but only with respect to their liability as stockholders for the conduct of your business.

2.    **Each of the following is also an insured:**

   a.    Your "management and supervisors" and "employees," are insureds, but only for the conduct of your business within the scope of their employment. Your "management and supervisors" and "employee's" status as an insured will be determined as of the date of the "discrimination," "harassment" or "inappropriate employment conduct" which caused the "insured event."

   b.    Any organization that you newly acquire, form or merge with while this Policy is in effect is an insured if you own at least fifty-one percent (51%) of it, but no newly acquired or formed or merged organization is covered for more than sixty (60) days or the remainder of the Policy Period, whichever is less, from the date that you acquire or form it, or for "loss" that results from an "insured event" that happened or commenced before you acquired or formed it, or for "loss" covered under any other insurance unless agreed by us within such sixty (60) day period. We may require an additional premium for any individuals who become "employees" as a result of such acquisition or formation or merger.

   This paragraph does not apply to a partnership, joint venture, or to any organization once it is shown in the Declarations.

   c.    If a "claim" against an individual insured under this Policy includes a "claim" against the lawful spouse of such insured solely by reason of :

      **(1)**    Status as a spouse, or

      **(2)**    Such spouse's ownership interest in property or assets that are sought as recovery for an "insured event"

any "loss" for which such spouse becomes legally obligated to pay on account of such "claim" shall be deemed a "loss" which such insured of the spouse becomes legally obligated to pay as a result of such "claim".

All terms, conditions, limitations and exclusions of this Policy applicable to "loss" sustained by such individual insured in the "claim" shall also apply to such spouse's "loss".

This extension of coverage shall not apply to the extent the "claim" alleges any wrongful act or omission by such spouse.

## SECTION IV - LIMITS OF INSURANCE

1.  The **LIMITS OF INSURANCE** shown in the Declarations and the provisions contained in this section establish the most we will pay regardless of the number of:

    **a.**  Insureds;

    **b.**  "Claims" made; or

    **c.**  Persons or organizations making "claims."

2.  **Each Claim Limit**

    This is the most we will pay for "claims" made or brought during the Policy Period for "loss" that results from any "one insured event" regardless of the number of "claims."

3.  **Total Policy Limit for All Claims (Policy Aggregate Limit)**

    This is the most we will pay for the combined total of all "claims" first made or brought during the Policy Period.

4.  **How the LIMITS OF INSURANCE apply to an extension of the Policy Period.**

    If the Policy Period is extended after issuance for an additional period, the additional period will be deemed part of the past preceding period for purposes of determining the limits of liability.  Accordingly, the extension of the Policy Period will in no way increase the limits of liability.

5.  **Allocation of "Defense Costs"**

    In the event that any portion of a "claim" does not come within the coverage afforded by this Policy, we will be entitled to an allocation of "defense costs" incurred on behalf of the insureds based upon the ratio of the number of counts, causes of actions or allegations for which coverage is afforded under this Policy as compared to the number of such counts, causes of action or allegations which are not within the scope of coverage.  We will not be required or obligated to pay that portion of "defense costs" allocated to those counts, causes of action, or allegations which are not within the scope of coverage herein.

**SECTION V - RETENTION**

1.    Our obligation to pay under this Policy applies only to the amount of "loss" in excess of the **RETENTION** amount shown in the Declarations and the **LIMITS OF INSURANCE** shown in the Declarations will not be reduced by the amount of such **RETENTION**.

The applicable **RETENTION** will be decreased by fifty percent (50%) (i.e., a $5,000 **RETENTION** will be $2,500) if one or both of the following conditions are met:

a.    **Wrongful Termination or Demotion Condition.** For any "claim" alleging wrongful termination or wrongful demotion of an "employee" if prior to the termination or demotion of that "employee" you have consulted with and materially complied with the advice of "Panel Defense Counsel" or a labor law attorney approved by us prior to the termination or demotion of that "employee."  This Provision does not apply unless the contact with our appointed attorney is made at least 24 hours prior to the termination or demotion, and the attorney has had a reasonable length of time to respond to the information provided.

b.    **"Mediation" of "Claims" Condition.** If a "claim" is fully and finally resolved to the satisfaction of all parties, including us, through "mediation," provided that such "mediation" is initiated and concluded and/or abandoned before and not subsequent to commencement of any litigation or arbitration. In the event such "mediation" does not fully and finally resolve the "claim," there shall be no reduction of the **RETENTION** obligation, and all "loss" expenses incurred in the "mediation" shall be included in the total "loss" expenses for the " claim."

2.    You are responsible for the payment of "loss" within the **RETENTION**, including the payment of "defense costs" directly to any law firm(s) that we have retained on your behalf to defend a "claim." At the time a "claim" is reported we will advise you of the name of any law firm(s) we have retained on your behalf and advise them that they are to bill you directly for the **RETENTION** amount.

3.    We may advance on your behalf payment for the amount of an award or settlement that is within the **RETENTION** amount, and you must repay us any such amount promptly upon demand.

4.    The **RETENTION** amount applies separately to each "claim" made.   However, the **RETENTION** amount will only apply once to all "claims" arising out of any "one insured event" regardless of the number of claimants who allege damages.

5.    We have no obligation whatsoever, either to you or to any other person or entity, to pay all or any portion of the **RETENTION** amount, except as indicated in Item 3 above. We will, however, at our sole discretion, have the right and option to do so, in which event you must repay us any such amount promptly upon demand.

**SECTION VI - CONDITIONS**

We have no duty to provide coverage under this Policy unless there has been full compliance with all the conditions contained in this Policy.

1.    **Cancellation**

    **a.**   The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

    **b.**   We may cancel this Policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

        (1). 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

        (2). 30 days before the effective date of cancellation if we cancel for any other reason.

    **c.**   We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

    **d.**   Notice of cancellation will state the effective date of cancellation. The Policy period will end on that date.

    **e.**   If this Policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

    **f.**   If notice is mailed, proof of mailing will be sufficient proof of notice.

2.    **Duties in the event of a "claim" or "suit".**

    **a.**   You must see to it that we or our authorized representative are notified within sixty (60) days or as soon as practicable after a "claim" is made.  Notice should include:

        **(1)**   The identity of the person(s) alleging "discrimination," "harassment" or "inappropriate employment conduct";

        **(2)**   The identity of the insured(s) who allegedly committed the "discrimination" or "harassment" or "inappropriate employment conduct;"

        **(3)**   The identity of any witness to the alleged "discrimination," "harassment" or "inappropriate employment conduct";

        **(4)**   The date the "insured event" took place; and

        **(5)**   The written charge, complaint or demand as applicable.

    **b.**   If a "suit" is brought against any insured, you must:

        **(1)**   record the specifics of the "suit" and the date received; and

        **(2)**   immediately see to it that we receive written notice of the "suit".

**c.**   You and any other insured must:

    **(1)**   Send us copies of any demands, notices, summonses or legal papers received in connection with the "claim";

    **(2)**   Authorize us to obtain records and other information;

    **(3)**   Cooperate with us in the investigation or defense of the "claim"; and

    **(4)**   Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this Policy may also apply.

**d.**   No insured will, except at their own cost, voluntarily make a payment, assume any obligation, or incur any expense without our consent. Subsequent payments which are deemed by us as having been prejudiced by any such voluntary payment will also be your sole responsibility.

**3.**   **Legal Action Against Us**

**a.**   No person or organization has a right under this Policy:

    **(1)**   To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

    **(2)**   To sue us on this Policy unless all of its terms have been fully complied with.

**b.**   A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured obtained after an actual trial or by motion, but we will not be liable for damages that are not payable under the terms of this Policy or that are in excess of the applicable **LIMITS OF INSURANCE**.  An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

**4.**   **Other Insurance**

If other valid and collectible insurance is available to you for a "loss" we cover under this Policy, our obligations are limited as follows:

**a.**   **Primary Insurance**

    This Policy is primary insurance except when b. below applies. If this Policy is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with that other insurance by the method described in c. below.

**b.**   **Excess Insurance**

    This Policy is excess over any other insurance, whether primary, excess, contingent, or any other basis, that is:

    **(1)**   Effective prior to the beginning of the policy period shown in the Declarations of this Policy;

**(2)** Applies on other than a claims-made basis.

When this Policy is excess, we shall have no duty to defend any "claim" that any other insurer defends. If no other insurer defends, we shall undertake to do so, but we shall be entitled to your rights against all those other insurers.

When this insurance is excess over other insurance, we shall pay only our share of the amount of the "loss," if any, that exceeds the sum of:

**(a)** The total amount that all such other insurance would pay for the "loss" in the absence of this insurance; and

**(b)** The total of all deductible and self-insured amounts under all other insurance; and

**(c)** Your **RETENTION** amount.

We shall share the remaining "loss", if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the **LIMITS OF INSURANCE** shown in the Declarations.

**c.    Method of Sharing**

**(1)** If all of such other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of liability or none of the "loss" remains, whichever comes first.

**(2)** If any of such other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its appropriate limits to the limits of liability of all other insurers.

**5.    Calculation of Premium**

**a.    Our Manuals**

Our manual of rules, rates, rating plans and classifications will determine all premium for this policy.  We may change our manuals and apply the changes to this policy if authorized by law or a governmental agency regulating this insurance.

**b.    Premium Adjustment**

Premium adjustment may be made either at the time cancellation is effected or as soon as practicable thereafter, but payment or tender of unearned premium is not a condition of cancellation.

**6.    Premiums**

The first Named Insured shown in the Declarations:

**a.** Is responsible for the payment of all premiums; and

**b.** Will be the payee for any return premiums we pay.

**7.** **Representations**

By accepting this Policy, you agree:

**a.**   The statements in the "application" and declarations are accurate and complete;

**b.**   Those statements are based upon representations you made to us; and

**c.**   We have issued this Policy in reliance upon your representations.

**8.** **Changes**

This Policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This Policy's terms can be amended or waived only by endorsement issued by us and made a part of this Policy.

**9.** **Separation of Insureds**

With respect to any "claim" reported under this Policy, knowledge possessed by any one insured shall not be imputed to any other insured.

**10.** **Subrogation**

If an insured has rights to recover all or part of any payments we have made under this Policy those rights are transferred to us; no insured may do anything after a "loss" to impair them. At our request, such insured will bring suit or transfer those rights to us and help enforce them.

**11.** **Death, Incapacity or Bankruptcy**

We will not be relieved of our obligations under this Policy because of:

**a.**   The death or incapacity of an insured.

**b.**   Bankruptcy or insolvency of any insured or of any insured's estate.

**12.** **False or fraudulent claims**

If any insured shall proffer any "claim" knowing the same to be false or fraudulent as regards amount or otherwise, this Policy shall become void and all claims hereunder shall be forfeited as respects that particular insured; however, the policy shall not be voided as to any other insured who was not party to such false and fraudulent claim submission.

**13.** **Transfer Of Your Rights And Duties Under This Policy**

Your rights and duties under this Policy may not be transferred without our written consent.

## SECTION VII - WHEN COVERAGE IS PROVIDED

**1.** **Claims Made Coverage.**  This Policy applies only to "claims" first made or brought against you, while this Policy is in effect or during the Limited Reporting Period or Extended Reporting Period if applicable.

A "claim" will be considered first made or brought on the date we or any insured receives a written "claim" whichever comes first.

All "claims" because of "one insured event" will be considered to have been made or brought on the date that the first of those "claims" was first made or brought.  Any "claim" arising out of an "insured event" reported to us pursuant to paragraph 2 will be deemed first made on the date notice of the "insured event" was given to us.

2.      **Notice of potential claim.**   If during the Policy Period, any insured becomes aware of an "insured event" which they reasonably believe may result in a future "claim" and they or the Named Insured or any insured entity provide(s) notice in writing to us of such "insured event" prior to the end of the Policy Period, then any "claim" subsequently arising from such "insured event" shall be deemed to have been made on the date notice of such "insured event" was given to us.  Such notice must describe the "insured event" in reasonable detail and provide the name or names of the potential "claimant(s)."

This Policy provides coverage for potential "claims" reported under this paragraph, provided an actual "claim" is made or "suit" is brought within five (5) years after the end of the Policy Period.

3.      **Limited Reporting Period** means the sixty (60) day period starting with the end of the Policy Period.  Coverage under the Limited Reporting Period applies to "claims" which are first made against the insured during such 60-day period based upon "insured events" which happen prior to the expiration or cancellation of coverage and are otherwise covered by the Policy.

The Limited Reporting Period does not extend the Policy Period nor change the scope of coverage provided. We will consider any "claim" first made or brought during the Limited Reporting Period to have been made on the last date on which this Policy is in effect.

4.      **When the Limited Reporting Period will apply.**   The Limited Reporting Period will apply if this Policy is canceled or not renewed by us or the Named Insured for any reason other than nonpayment of premium. Coverage under the limited reporting period may not be canceled.

However, the Limited Reporting Period will not apply to "claims" if other insurance you buy covers them or would cover them if its limits of coverage had not been exhausted.

5.      **How to add an Extended Reporting Period**. If the Limited Reporting Period applies, an Extended Reporting Period of twelve (12) months can be added by means of an Extended Reporting Period Endorsement and the payment of an additional premium.  Such additional premium shall not exceed one hundred percent (100%) of the annual premium charged for the last Policy Period.  The endorsement sets forth the terms of coverage during the Extended Reporting Period.  Coverage under an extended reporting period is limited to "claims" which are first made against the insured during the extended reporting period based upon "insured events" which happen prior to the expiration or cancellation of coverage and are otherwise covered by the Policy.

The Extended Reporting Period Endorsement will not be issued unless we receive a written request for it within thirty (30) days after this Policy ends. Once that premium is paid, the endorsement may not be canceled and the premium will be fully earned.

6.      **The LIMITS OF INSURANCE also apply to the Limited and Extended Reporting Periods**. The **LIMITS OF INSURANCE** that apply at the end of the Policy Period are not renewed or increased and the total limits shown in the Declarations shall not be increased by the addition of either limited or extended reporting periods.

## SECTION VIII - COVERAGE TERRITORY

We will defend "claims," or pay judgments or settlements, for "insured events" that happen:

1.      in the United States of America, its territories and possessions, and Puerto Rico; or

2.      anywhere in the world with respect to the activities of a person whose place of employment is in the territory described in 1. above, while he or she is away on your business.

Provided that "claim" is made or "suit" is brought in, and the insured's obligation to pay "loss" is determined on the merits under the substantive federal, state or local law of, the United States, its territories and possessions or Puerto Rico.

## SECTION IX - DEFINITIONS

1.      "Application" means the application attached to and forming part of this Policy, or maintained of record in our file, including any materials submitted in connection with such "application," shall be considered a part of this Policy, as if physically attached.

2.      "Claim" means a written demand received by the insured alleging damages or the filing of a "suit", or any administrative proceeding including but not limited to the Equal Employment Opportunity Commission, or any other state or federal agency or authority with jurisdiction over you.  However, "claim" does not include (1) labor or grievance arbitration subject to a collective bargaining agreement or (2) criminal proceedings.

3.      "Co-Payment" means that after you have paid the applicable **RETENTION** as required, we will only pay ninety percent (90%) of the balance of the "loss" and you will be responsible for ten percent (10%) of the balance of the "loss".

   This definition only applies to **SECTION I, 4.b.** of this Policy and any Endorsement specifically providing for a "Co-Payment".

4.      "Defense Costs" means those reasonable and necessary expenses that result from the investigation, settlement or defense of a specific "claim", including attorney fees and expenses, the cost of legal proceedings, the cost of covered "mediation", the cost of appeal bonds, the cost of bonds to release property being used to secure a legal obligation (but only for bond amounts within the **LIMITS OF INSURANCE** that apply; we have no obligation to furnish such bonds), all reasonable expenses that any insured incurs in court at our request while helping us investigate or defend a "claim" (we will not pay more than $100 per day for earnings lost by the insured because of time taken off work), and all costs taxed against any insured in a "suit".

   However, "defense costs" do not include  salaries and expenses of our employees, including employed attorneys, salaries and expenses of your employees, fees and expenses of independent adjusters we hire, and interest that accumulates on the amount of a judgment.

**5.**     "Discrimination" means termination of the employment relationship, a demotion or failure or refusal to hire or promote or denial of an employment benefit or the taking of any adverse or differential employment action because of race, color, religion, age, sex, pregnancy, sexual orientation or preference, national origin, or disability including a disability resulting from human immunodeficiency virus (HIV) or acquired immune deficiency syndrome (AIDS), or any other basis prohibited by federal, state or local law.

**6.**     "Employee" means:

**a.**     an individual whose labor or service is engaged by and directed by an insured. This includes "part-time employees," "seasonal employees," "temporary employees," "temporary workers," "interns," "volunteers" and "management or supervisory employees;"

The term "employee" also includes a former "employee". As respects coverage for former "employees" also refer to **SECTION III – INSURED**, item **2.a.**

**b.**     an individual who is a "leased worker" provided such individual shall be deemed an "employee" only if, and to the extent that, you provide indemnification to such individual for services rendered as if they were rendered by an actual "employee" of yours, and the labor leasing firm(s) with whom you have such agreement(s) is(are) scheduled by written endorsement to this Policy; and

**c.**     an individual who is an independent contractor contracted to perform services for you; provided that such individual shall be deemed an "employee" only if, and to the extent that you provide indemnification to such individual for services rendered as if they were rendered by an actual "employee" of yours, and provided further that such individual is scheduled by written endorsement to this Policy. This Policy does not cover any "loss" which any insured is obligated to pay to an independent contractor for overtime pay, vacation pay, or any employee benefit.

**7.**     "Harassment" means, unwelcome sexual or non-sexual advances, requests for sexual or non-sexual favors or other verbal, visual or physical conduct of a sexual or non-sexual nature that:

**a.**     is explicitly or implicitly made a condition of employment,

**b.**     are used as a basis for employment decisions, or

**c.**     create a work environment that interferes with performance.

"Harassment" includes allegations of assault and battery, but only if they are related to a charge of sexual harassment.

**8.**     "Inappropriate Employment Conduct" means actual or constructive termination of an employment relationship in a manner which is against the law and wrongful or in breach of an implied agreement to continue employment, including allegations of breach of an implied employment contract and breach of the covenant of good faith and fair dealings in the employment contract, or an employment related incident resulting in one or more of the following offenses:

**a.**     wrongful demotion or wrongful failure to employ or promote;

**b.**     wrongful discipline;

**c.**     wrongful denial of tenure or deprivation of career opportunity;

**d.**     negligent hiring, supervision or evaluation;

**e.**     "retaliation";

**f.**     misrepresentation or defamation;

**g.**     infliction of emotional distress, humiliation, mental injury or mental anguish;

**h.**     false arrest, detention or imprisonment; or

**I.**     libel, slander, defamation of character or any invasion of right of privacy.

**j.**     employment terminations, disciplinary actions, demotions or other employment decisions which violate public policy or the Family Medical Leave Act or similar state law;

**k.**     violations of the Uniformed Services Employment and Reemployment Rights Act, however,

"Inappropriate Employment Conduct" does not include severance payments or amounts determined to be owing under a written contract of employment for a definite period of time; however, "defense costs" for "claims" of breach of a written or express contract of employment for a definite period of time are covered.

**9.**     "Insured Event" means actual or alleged acts of "discrimination," "harassment," and/or "inappropriate employment conduct" by an Insured against an "employee," former "employee," or an applicant seeking employment with the Named Insured.

**10.**    "Intern" means a person who is an advanced student or recent graduate in a professional field who provides services to the Named Insured or is receiving practical experience from the Named Insured without any express or implied promise of remuneration. Coverage is only extended to "interns" while they are acting at the direction of and within the scope of duties for you.

**11.**    "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

**12.**    "Loss" means damages, judgments, settlements, statutory attorney fees and "defense costs", including:

**a.**     prejudgment and post judgment interest awarded against an insured on that part of any judgment paid by us, and

**b.**     back pay awards and front pay awards.

However, "loss" does not include:

**a.**   civil, criminal or administrative fines or penalties imposed by law that are not otherwise insurable, or

**b.**   non-monetary relief, or

**c.**   punitive or exemplary damages where such damages are not insurable because of state or federal law, or,

**d.**   payment of insurance or trust plan benefits by or on behalf of retired employees, or that to which a claimant would have been entitled as an employee had the insured provided the claimant with a continuation of insurance, or

**e.**   costs incurred by an insured to modify or adapt any building or property in order to make such building or property more accessible or accommodating to any disabled person, or

**f.**   matters which may be deemed uninsurable according to the law under which this Policy is construed, or

**g.**   amounts owed under federal, state or local wage and hour laws, and/or earned commissions, bonuses, stock options, profit sharing or benefits pursuant to a contract of employment.

**13.**   "Management and Supervisors" means a director, owner,  partner, principal,  officer, in-house attorney, or shareholder of the insured, the personnel or human resources director, risk management personnel or any other "employee" of the insured having management-level responsibility for personnel matters (i.e., ability to hire, terminate, demote or prepare a written evaluation of employees).

**14.**   "Mediation" means a non-binding process in which a neutral panel or individual assists the parties in reaching their own settlement. To be considered "mediation" under this Policy, the process must be of the kind set forth in the Commercial Mediation rules of the American Arbitration Association. We may, however, at our sole option, recognize any "mediation" process presented by you to us for approval.

"Mediation" under this Policy does not include any mediation, conciliation, or any other alternative dispute resolution mechanism that is part of a proceeding before the Equal Employment Opportunity Commission or a similar state agency.

**15.**   "One Insured Event" means:

**a.**   "insured events" which are (1) related by an unbroken chain of events or (2) made or brought by the same claimant; or

**b.**   class action or multiple plaintiffs suits arising out of related "insured events."

**16.**   "Panel Defense Counsel" means an attorney previously selected by us and who is listed on our current published listing of approved defense attorneys.

**17.**   "Part Time Employee" means an "employee" whose labor or service is engaged on the basis that the "employee" will not work more than twenty (20) hours per week.

**18.**   "Retaliation" means, retaliatory treatment against an "employee" of the insured on account of such "employee's" exercise or attempted exercise of his or her rights under law.

**19.**   "Seasonal employee" means, an "employee" whose labor or service is engaged on the basis that the "employee" will not work more 1,000 hours per year.

**20.**   "Suit" means, a civil proceeding in which damages because of a covered "insured event" to which this Policy applies are alleged. "Suit" includes:

    **a.**   An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

    **b.**   Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

**21.**   "Temporary employee" means, an "employee" or  "part time employee" whose labor or service is engaged for a specific time period or project. "Temporary employee" does not include a "temporary worker".

**22.**   "Temporary worker" means a person who is furnished to you through an outside temporary employment agency to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

**23.**   "Volunteer worker" means a person who provides services to the named insured without any express or implied promise of remuneration. Coverage is only extended to a "volunteer worker" while acting at the direction of, and within the scope of duties for you.

## Houston Casualty Company
### Houston, TX

| Endorsement Effective Date | Policyholder | Policy Number | Endorsement |
|---|---|---|---|
| 09/20/2017 | **PMTD Restaurants LLC; RFM Enterprises Inc; Champion Restaurants-Fiesta LLC; EPS Restaurants LLC; Lincoln Gasoline Operating LLC** | **H716-915480** | **EP 532** |

"This contract is registered and delivered as a surplus line coverage under the Alabama Surplus Line Insurance Law."

**THIS ENDORSEMENT CHANGES YOUR POLICY. PLEASE READ IT**

**CAREFULLY.**

**SPECIFIC ENTITY/LOCATION(S) WITH RETROACTIVE DATE ENDORSEMENT**

This Endorsement modifies your Policy as follows:

The following applies to the Entity(ies) and/or Location(s) listed below:

Hwy 280, Box 104B, Childersburg, AL 35044

2035 Seventh St South, Clanton, AL 35045

1204 Talladega Highway South, Sylacauga, AL 35150

Coverage under this Policy and any/or any Endorsement thereto for the above-listed entities and/or locations is limited to "claims" based upon circumstances or "insured events" which take place on or after the Retroactive Date listed below.

Retroactive Date: 09/20/2017

Additional Premium: $

This Endorsement changes the Policy to which it is attached effective on the inception date of this Policy unless a different date is indicated above. All other terms and conditions of this Policy remain unchanged.

by _____
Authorized Representative

EP 532                      Page 1 of 1