# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| PMTD RESTAURANTS, LLC,<br><br>Plaintiff,<br><br>v.<br><br>HOUSTON CASUALTY COMPANY,<br><br>Defendant. | CIVIL ACTION NO.<br>1:20-cv-04191-WMR |

## ORDER

Before the Court is Defendant Houston Casualty Company's ("Houston Casualty") motion for summary judgment [Doc. 51], which Plaintiff PMTD Restaurants, LLC ("PMTD") opposes [Doc. 52]. The Court held a hearing on the motion on March 3, 2022. [Doc. 55.] After careful consideration of the parties' arguments, the applicable law, and the relevant parts of the record, and for the reasons discussed herein, the Court grants Houston Casualty's motion for summary judgment.

**I.   Background**

PMTD is a multi-unit franchise that operates various restaurants. [Doc. 34 ¶ 1.] Houston Casualty, an insurance company, issued an insurance policy to PMTD with a policy period of December 26, 2015, to December 26, 2016 (the "2015–2016

Policy"). [*Id.* ¶¶ 2–3.] As far as the Court can discern, the 2015–2016 Policy is not in the record. [*See also* Doc. 53 at 2.] The following year, Houston Casualty issued another insurance policy to PMTD with a policy period of December 26, 2016, to December 26, 2017 (the "2016–2017 Policy"). [Doc. 34 ¶ 5.] Both policies were in full force and effect during the policy periods and covered certain claims made by employees alleging discrimination and retaliation. [*Id.* ¶¶ 12–13.]

The 2016–2017 Policy "applies only to 'claims' first made or brought against [PMTD] and reported to [Houston Casualty], in writing" between December 26, 2016, and December 26, 2017 (the "2016–2017 Policy Period"). [Doc. 38-2 at 2, 21.] A claim is "first made or brought" on the date PMTD or Houston Casualty receives a claim, whichever is first. [*Id.* at 21.] But, claims because of "one insured event" will be considered "made or brought" on the date that the first of those claims was made or brought. [*Id.*] The term "one insured event" is defined as "insured events" that are related by an unbroken chain of events or made or brought by the same claimant. [*Id.* at 57.] Lastly, the term "insured event" is defined as actual or alleged acts of discrimination, harassment, and/or inappropriate employment conduct (including retaliation) by PMTD against an employee. [*Id.* at 55–56.]

Putting that all together, the 2016–2017 Policy applies to claims first "made or brought" against PMTD and reported to Houston Casualty between December 26, 2016, and December 26, 2017, with the caveat that all claims because of

discrimination and/or retaliation that are made or brought by the same claimant are considered to be "made or brought" on the date of the first of those claims.

On July 19, 2016, S. Patton, an employee of PMTD, filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") against PMTD and alleged racial discrimination (the "Discrimination Charge"). [Doc. 34 ¶ 14.] On December 30, 2016, S. Patton filed a second charge of discrimination against PMTD and alleged retaliation for filing the Discrimination Charge (the "Retaliation Charge"). [*Id.* ¶ 22.] PMTD did not at the time provide Houston Casualty with notice of either charge. [*Id.* ¶¶ 15, 21, 24.] After receiving right-to-sue letters from the EEOC, on May 16, 2017, S. Patton sued PMTD in the District Court for the Northern District of Alabama (the "Underlying Action"). [*Id.* ¶¶ 20, 23, 25.]

On May 25, 2017, PMTD gave notice to Houston Casualty of the Underlying Action and sought coverage for the loss and damages incurred as a result of the Underlying Action. [*Id.* ¶ 26.] Houston Casualty denied coverage and thus did not defend PMTD in the Underlying Action. [*Id.* ¶¶ 27, 30, 35.] PMTD proceeded to trial in the Underlying Action and obtained a complete defense verdict. [*Id.* ¶ 34.] PMTD has demanded that Houston Casualty indemnify it for the defense costs incurred in the Underlying Action, but Houston Casualty has declined to do so. [*Id.* ¶ 36.]

On October 9, 2020, PMTD brought this action against Houston Casualty and asserted that Houston Casualty breached the 2016–2017 Policy by denying coverage for the Underlying Action. [Doc. 1 ¶¶ 7, 39–45.] PMTD did not assert that Houston Casualty breached the 2015–2016 Policy. After discovery, both PMTD and Houston Casualty moved for summary judgment. [Doc. 50 at 1; *see* Docs. 38, 48.]

In its first summary judgment order, the Court granted partial summary judgment to both PMTD and Houston Casualty. [Doc. 50 at 1.] The Court first found that the Discrimination Charge, the Retaliation Charge, and the Underlying Action are all "claims" under the 2016–2017 Policy. [*Id.* at 6–13.] The Court then determined that PMTD notified Houston Casualty of the Retaliation Charge and the Underlying Action (to the extent it was based on the Retaliation Charge) within the 2016–2017 Policy Period, so Houston Casualty "should indemnify PMTD for costs incurred in defending claims as to the second EEOC Charge for retaliation." [*Id.* at 13–15.] Even so, the Court found that Houston Casualty did not have to indemnify PMTD for costs incurred in defending claims related to the Discrimination Charge, as PMTD failed to timely report the Discrimination Charge to Houston Casualty. [*See id.*]

In the order, the Court also noted a 60-day notice provision in the 2016–2017 Policy and allowed the parties "to submit motions for partial summary judgment addressing this 60-day clause and whether it alters the Court's ruling." [*Id.* at 15 &

n.4.]  Houston Casualty then filed a second motion for summary judgment that, among other things, contends that the 60-day notice provision is "not applicable." [Doc. 51-1 at 3 n.1.]  In opposing Houston Casualty's motion, PMTD "agree[s] that the 60-day notice provision does not apply here at all."  [Doc. 52 at 6.]  In light of the parties' agreement, the Court does not address the 60-day notice provision.

In support of its motion for summary judgment, and relevant here, Houston Casualty argues that the 2016–2017 Policy, the only policy it allegedly breached, does not provide coverage for the Underlying Action, the only claim for which PMTD sought coverage.  [Doc. 51-1 at 5.]  Houston Casualty notes that the 2016–2017 Policy provides coverage only for claims first "made or brought" during the 2016–2017 Policy Period.  [*Id.* at 6.]  It further notes that all claims because of "one insured event" are considered "made or brought" on the date that the first of those claims was made or brought.  [*Id.*]  According to Houston Casualty, the Discrimination Charge, the Retaliation Charge, and the Underlying Action are all claims because of "one insured event," as the claims were because of discrimination and/or retaliation and made or brought by the same claimant, S. Patton.  [*Id.* at 6–7.] And, because the three claims were because of "one insured event," the claims (including the Underlying Action) are all considered to have been "made or brought" on the date that the first of those claims was made or brought—July 19, 2016, the date of the Discrimination Charge.  [*Id.* at 7.]  Therefore, in Houston Casualty's

5

view, the Underlying Action was first "made or brought" before the 2016–2017 Policy Period of December 26, 2016, to December 26, 2017, and thus the 2016–2017 Policy does not provide coverage for the Underlying Action.  [*Id.*]

In opposition, PMTD contends that the 2016–2017 Policy does not preclude coverage for the Underlying Action because of a failure to provide timely notice of an earlier claim, such as the Discrimination Charge.  [Doc. 52 at 10.]  It asserts that the "one insured event" provision "does not suggest that the insurer or a court must determine timeliness of notice for all claims based on when notice was provided for one single claim"; instead, "whether notice was timely provided for each claim should be judged independently."  [*Id.* at 11.]  PMTD also argues that Houston Casualty's interpretation of the 2016–2017 Policy makes its coverage illusory.  [*Id.* at 12 & n.3.]  Finally, PMTD asserts that the 2016–2017 Policy is ambiguous.  [*Id.* at 13–15.]

The Court held a hearing on the motion for summary judgment on March 3, 2022.  [Doc. 55.][1]

## II.   Discussion

Before deciding the merits of Houston Casualty's motion for summary judgment, the Court briefly addresses a minor procedural issue.  Specifically, in

---

[1] After the hearing, the Court ordered the parties to mediate the case.  [Doc. 56.]  The parties' mediation was unsuccessful [Doc. 58], so the Court now rules on the pending motion for summary judgment.

passing, PMTD argues that the Court should reject Houston Casualty's attempt to file an additional motion for summary judgment on issues beyond what the Court expressly allowed and to relitigate certain arguments. [Doc. 52 at 3.] The Court finds this argument unavailing and determines that it may reconsider or revise its first summary judgment order based on Houston Casualty's arguments.

In the Court's first summary judgment order, the Court denied summary judgment on some issues, thereby making it an interlocutory order. It is well-established that the Court may reconsider or revise such an interlocutory order prior to final judgment. *See, e.g.*, *Harper v. Lawrence County*, 592 F.3d 1227, 1231–32 (11th Cir. 2010) ("It is permissible for a district court to rescind its own interlocutory order."); *Toole v. Baxter Healthcare Corp.*, 235 F.3d 1307, 1315 (11th Cir. 2000) ("[T]he district court has plenary power . . . to reconsider, revise, alter or amend [an] interlocutory order[.]"); *see also* Fed. R. Civ. P. 54(b) (stating that an order that "adjudicates fewer than all the claims . . . may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities").

The Court here finds there is good cause to reconsider or revise its first summary judgment order because, as the Court will discuss, Houston Casualty's arguments in support of summary judgment are meritorious. To the extent Houston Casualty's arguments have already been litigated, the Court misunderstood or was mistaken about those arguments and thus must correct its first summary judgment

order here.  There is also no prejudice to PMTD, which had the opportunity to respond to Houston Casualty's arguments in its opposition brief and at the hearing.  In fact, PMTD does not even claim that it is prejudiced by Houston Casualty's arguments.  [*See generally* Doc. 52.]

With that procedural issue resolved, the Court next considers the motion for summary judgment.  The Court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  In evaluating a summary judgment motion, "[a]ll evidence and factual inferences are viewed in the light most favorable to the non-moving party, and all reasonable doubts about the facts are resolved in favor of the non-moving party."  *Hardigree v. Lofton*, 992 F.3d 1216, 1223 (11th Cir. 2021).

"As is the case with all contracts, unambiguous terms of an insurance policy require no construction, and the plain meaning of such terms must be given full effect, regardless of whether they might be beneficial to the insurer or detrimental to the insured."  *Piedmont Office Realty Tr., Inc. v. XL Specialty Ins. Co.*, 771 S.E.2d 864, 866 n.1 (Ga. 2015).  The Court thus goes through the relevant provisions of the 2016–2017 Policy, which is the only policy PMTD claimed that Houston Casualty breached.  [Doc. 1 ¶¶ 7, 39–45.]

The 2016–2017 Policy applies only to "claims" that are first "made or brought" against PMTD and "reported" to Houston Casualty within the 2016–2017 Policy Period of December 26, 2016, to December 26, 2017. [Doc. 38-2 at 2, 21.] In the first summary judgment order, the Court found that the Discrimination Charge, the Retaliation Charge, and the Underlying Action are all "claims" under the 2016–2017 Policy. [Doc. 50 at 6–13.] After further consideration, the Court stands by that portion of the first summary judgment order and thus adopts that analysis and conclusion here. In addition, the Court notes that there is no dispute that PMTD reported the Underlying Action to Houston Casualty within the 2016–2017 Policy Period. [Doc. 34 ¶ 26.] As such, the pertinent question here is whether the Underlying Action, the only claim for which PMTD sought coverage [*see* Doc. 52 at 6], was "made or brought" within the 2016–2017 Policy Period. If not, then the 2016–2017 Policy does not apply and does not provide coverage for the Underlying Action.

According to the 2016–2017 Policy, claims because of "one insured event" will be considered "made or brought" on the date that the first of those claims was made or brought. [Doc. 38-2 at 21.] The term "one insured event" is defined in part as "insured events" that are made or brought by the same claimant. [*Id.* at 57.] And, the term "insured event" is defined as actual or alleged acts of discrimination and/or retaliation by PMTD against any employee. [*Id.* at 55–56.] In other words, claims

9

because of discrimination and/or retaliation made or brought by the same claimant are all considered "made or brought" on the date that the first of those claims was made or brought.

The Court finds that these provisions are unambiguous and thus require no construction and must be given full effect according to their plain meaning.  *See Piedmont Office Realty Tr.*, 771 S.E.2d at 866 n.1.  Applying these provisions, the Court agrees with Houston Casualty that the Discrimination Charge, the Retaliation Charge, and the Underlying Action are claims because of "one insured event," as they are claims because of discrimination and/or retaliation brought by the same claimant, S. Patton.  As claims because of "one insured event," the three claims, including the Underlying Action, are considered "made or brought" on the date that the first of those claims was made or brought.  The first of those claims was the Discrimination Charge, which was made or brought on July 19, 2016, so that is also the date the Underlying Action was "made or brought."  The Underlying Action was therefore not "made or brought" within the 2016–2017 Policy Period of December 26, 2016, to December 26, 2017, and thus the 2016–2017 Policy does not provide coverage for the Underlying Action.[2]

---

[2] To extent the Court's first summary judgment order is inconsistent with this decision, the Court vacates that portion of the first order.

The Court disagrees with PMTD's various arguments in opposition to summary judgment. First, PMTD contends that the Court should not determine the timeliness of notice for the Underlying Action based on the timeliness of notice for earlier claims because "whether notice was timely provided for each claim should be judged independently." [Doc. 52 at 10–11.] PMTD misunderstands the issue before the Court. The Court is not addressing whether PMTD provided timely notice of the Underlying Action. Rather, the Court is deciding whether the Underlying Action was first "made or brought" within the 2016–2017 Policy Period, regardless of the timeliness of notice, as the 2016–2017 Policy applies only to claims first "made or brought" within the 2016–2017 Policy Period. In fact, the "made or brought" provision [Doc. 38-2 at 21] is separate from the timeliness of notice provision [*id.* at 22], the latter of which the Court need not address in this order.

Next, PMTD argues that the 2016–2017 Policy's "one insured event" provision is ambiguous. [Doc. 52 at 13–15.] However, PMTD nowhere explains exactly *how* the provision is ambiguous. [*See id.*] Even so, the Court rejects this argument. As noted, the provision states that all claims because of "one insured event" will be considered to have been made or brought on the date that the first of those claims was made or brought. [Doc. 38-2 at 21.] The term "one insured event" is defined to mean "insured events" (which is further defined as including alleged acts of discrimination and/or retaliation) that are made or brought by the same

11

claimant. [*Id.* at 55–57.] The Court finds that these provisions are unambiguous. Specifically, as is the case here, if there are multiple claims because of discrimination and/or retaliation made by the same claimant, all of those claims are considered to have been made or brought on the date that the first claim was made or brought.

PMTD cites only a decision from another judge on this Court to support its threadbare assertion that the "one insured event" provision is ambiguous. [Doc. 52 at 14–15.] In that case, the insurance policy contained a provision stating that all "Interrelated Wrongful Acts" were deemed to be one loss on account of one "Claim," with such "Claim" deemed to be "first made when the earliest of such Claims was first made." *Phila. Indem. Ins. Co. v. Noble Mgmt. LLC*, 2011 WL 13218007, at *3 (N.D. Ga. Dec. 22, 2011). The term "Interrelated Wrongful Act" was defined to mean "any causally connected Wrongful Act or any series of the same, similar or related Wrongful Acts." *Id.* at *1. The Court "conclude[d] that the term 'Interrelated Wrongful Acts' as used in the policy [was] ambiguous," so it was unclear how the term applied to the claims in that case. *Id.* at *4.

Beyond the fact that the case is non-binding, the Court finds *Philadelphia Indemnity* unpersuasive in this case. First, like PMTD in this case, the Court in *Philadelphia Indemnity* never explained how the provision at issue was ambiguous. Moreover, the "Interrelated Wrongful Acts" provision in *Philadelphia Indemnity* is materially different than the "one insured event" provision at issue here. Whereas it

might not have been clear to the Court in *Philadelphia Indemnity* whether certain wrongful acts were "causally connected" or a "series of the same, similar or related" wrongful acts, *id.* at *1, the Court faces no such issue here.  Instead, as noted, there is no ambiguity in the provision when determining whether claims that are because of discrimination and/or retaliation were made or brought by the same claimant.

Finally, PMTD argues that Houston Casualty's interpretation of the 2016–2017 Policy renders its coverage illusory.  [*See* Doc. 52 at 12 & n.3.]   Again, PMTD's argument misses the mark.  There is no question that the 2016–2017 Policy ordinarily provides coverage for claims that were "made or brought" and reported within the 2016–2017 Policy Period.  The 2016–2017 Policy's coverage is not illusory simply because it does not provide coverage for one particular claim—the Underlying Action here.

Further, just because the *2016–2017 Policy* does not provide coverage does not mean PMTD was wholly unable to receive coverage for the Underlying Action. Perhaps PMTD could have sought coverage under the *2015–2016 Policy*, as the Underlying Action is considered to have been "made or brought" on July 19, 2016, within the 2015–2016 Policy's policy period of December 26, 2015, to December 26, 2016 (the "2015–2016 Policy Period").  [*See* Doc. 34 ¶ 3.]  However, PMTD did

not assert a claim under the 2015–2016 Policy in its complaint.[3] The Court raised this issue at the hearing and all but invited PMTD to request leave to amend its complaint to assert a claim under the 2015–2016 Policy, but PMTD effectively rejected the Court's invitation. The Court notes that PMTD has not filed a motion for leave to amend its complaint, and the Court "is not required to grant a plaintiff leave to amend [its] complaint sua sponte when the plaintiff, who is represented by counsel, never filed a motion to amend nor requested leave to amend before the district court." *Carruth v. Bentley*, 942 F.3d 1047, 1063 n.3 (11th Cir. 2019). As such, PMTD's action is limited only to the 2016–2017 Policy, which does not provide coverage for the Underlying Action.

## III.  Conclusion

Accordingly, Houston Casualty's motion for summary judgment [Doc. 51] is **GRANTED**.

**IT IS SO ORDERED**, this 23rd day of March, 2022.


WILLIAM M. RAY, II
UNITED STATES DISTRICT JUDGE

---

[3] To be sure, PMTD could not have reported or provided notice of the Underlying Action to Houston Casualty within the 2015–2016 Policy Period—which are at least requirements for coverage under the 2016–2017 Policy [*see* Doc. 38-2 at 21–22]—as the Underlying Action was not filed until after the 2015–2016 Policy Period. Even so, the Court need not address that issue because the only question before the Court here is whether the 2016–2017 Policy provides coverage, which it does not. As noted, PMTD did not assert a claim under the 2015–2016 Policy, and the 2015–2016 Policy is not even in the record, so the Court cannot analyze that policy, including whether it has similar reporting and notice requirements.